(January 18, 1912.)

## CITY OF POCATELLO, Plaintiff, v. JAMES A. MURRAY, Defendant.

### [120 Pac. 812.]

Res Adjudicata—Constitutional Law—Legislative Authority to Prescribe Manner of Fixing Water Rates—Sale of Water a Public Use—Municipal Authority to Contract for Water Supply — Municipal Authority to Prescribe Method of Fixing Rates—Contract Subject to Constitutional Provisions—Impairment of Obligation of Contract—Taking Property Without Due Process of Law—Plea of Another Action Pending.

### (Syllabus by the court.)

1. Where a bill was filed in the circuit court of the United States by a municipal corporation against M., who was maintaining and operating a waterworks system within the municipality, praying that the court "fix and promulgate reasonable rates and charges for water to be furnished by the defendant under his franchise to the plaintiff and its inhabitants . . . . and that the defendant be restrained and enjoined from making, fixing or promulgating any other rate or rates" greater than or different from those fixed by the court, and the court after hearing the case argued on demurrer to the petition entered an order and judgment sustaining the demurrer and dismissing the bill on the ground that the court was "without jurisdiction to fix and promulgate the water rates and charges which defendant shall have the right to collect," and thereafter the municipality filed its complaint in the state court, setting forth that the water rates charged by the defendant are unreasonable and unjust and that it has appointed commissioners in conformity with the provisions of sec. 2839, Rev. Codes, and that the defendant has neglected and

refused to appoint like commissioners in conformity with the provisions of the statute and prays that the court issue a writ, commanding and compelling the defendant to appoint commissioners in conformity with the statute (sec. 2839, Rev. Codes), *held:* That a plea that the judgment of the United States circuit court in dismissing the bill filed in that court is a bar to the prosecution and maintenance of the subsequent action in the state court, is not well taken and does not state facts sufficient to constitute an estoppel.

2.    Where a case was dismissed and disposed of on the ground that the court had no jurisdiction to hear and determine the matter involved, such court was without jurisdiction to determine or pass upon any question raised by the pleadings except the question alone of the court's jurisdiction; and any further finding or holding by the court with reference to the matters pleaded is not binding in a subsequent action between the same parties and cannot become *res adjudicata.*

3.    Under the provisions of secs. 1 and 2 of art. 15 of the state constitution, the use of all waters within this state which are sold, rented or distributed for a beneficial use is declared to be a public use, and subject to the regulation and control of the state in the manner prescribed by law, and the right to collect rates or compensation for water supplied to any county, city, town or water district or the inhabitants thereof is a franchise and cannot be exercised except by authority of and in the manner prescribed by law.

4.    Sec. 6, art. 15, of the constitution ordains that "The legislature shall provide by law the manner in which reasonable maximum rates may be established to be charged for the use of water sold, rented or distributed for any useful or beneficial purpose."

5.    After the adoption of secs. 1, 2, and 6 of art. 15 of the state constitution, it was in excess of and beyond the power of any city, town or village within this state, by ordinance, contract or otherwise, to bind itself or the inhabitants thereof to pay fixed rates or charges for water sold, rented or distributed for any longer or greater period of time than that intervening between the time of the passage of such ordinance and making of such contract and the subsequent fixing of rates under the enactment by the legislature of a statute prescribing the manner and method in which reasonable maximum rates might be established. Such an ordinance or contract would, on the other hand, be binding and enforceable until such time as the legislature, complying with the provisions of sec. 6, art. 15, enacted a statute prescribing the manner of fixing such rates and rates are established in conformity therewith.

6.    Ordinance No. 86 of the city of Pocatello, adopted on June 1, 1901, which prescribed a schedule of rates which the Pocatello Water Co. might charge for supplying water to the inhabitants of the city

of Pocatello for a fixed period of time and which also provided the method and manner of thereafter appointing a commission to establish rates at the expiration of such period, must be read and construed in the light of the provisions of the constitution (secs. 1, 2, and 6 of art. 15), and was subject to the operation of the constitution and the power of the legislature to prescribe the manner in which reasonable maximum rates might thereafter be established to be charged for the use of water sold, rented or distributed for any useful or beneficial purpose.

7. The appointment of commissioners under the provisions of sec. 2839, Rev. Codes, which was enacted subsequent to the adoption of ordinance No. 86 of the city of Pocatello, does not impair the obligation of a contract previously executed, and is therefore not in violation of sec. 10, art. 1, of the constitution of the United States, nor does it have the effect of taking defendant's property without due process of· law in violation of sec. 1 of the fourteenth amendment to the federal constitution.

8. Sec. 6, art. 15, of the state constitution, guarantees to everyone engaged in supplying water under a sale or rental that the rates to be established shall always be "reasonable maximum rates," and that as a consequence thereof the property of one so engaged shall not be taken without due process of law.

9. No one has a vested right to charge an unreasonable or unconscionable rate to consumers while exercising a franchise to serve a public use; and to deprive a person engaged in such a public service of the power to charge and collect an unreasonable, extortionate or unconscionable rate, deprives him of no right, natural or acquired, and cannot be the impairment of a contract within the purview and meaning of the federal constitution, nor does it amount to depriving him of property without due process of law.

10. The fact that sec. 2839 of the Rev. Codes, which provides for the appointment of a commission for the purpose of fixing rates to be charged water consumers, requires that such commissioners shall be "taxpayers·of the city," does not render the statute obnoxious to either the state or federal constitution on the ground that it does not provide an impartial and unprejudiced tribunal.

11. The plea of another action pending examined, considered, and *held* insufficient as a plea in abatement.

Original action by the city of Pocatello, praying a writ of mandate. Demurrer and, answer by the defendant, and demurrer by the plaintiff to defendant's answer. Demurrer to

the complaint overruled; demurrer to the answer sustained. Peremptory writ issued.

P. C. O'Malley, Clark & Budge, and Richards & Haga, for Plaintiff.

When property is devoted to a public use, it is subject to public regulation. (*Munn v. Illinois,* 94 U. S. 113, 24 L. ed. 77.)

"This power of regulation is a power of government continuing in its nature, and if it can be bargained away at all, it can only be by words of positive grant or something which is in law equivalent." (*Railroad Commission Cases,* 116 U. S. 325, 6 Sup. Ct. 334, 388, 1191, 20 L. ed. 636; *Budd v. New York,* 143 U. S. 517, 12 Sup. Ct. 468, 36 L. ed. 247; *Rogers Park Water Co. v. Fergus,* 180 U. S. 624, 21 Sup. Ct. 490, 45 L. ed. 702.)

Grants of immunity from legitimate governmental control are never to be presumed. (*Ruggles v. Illinois,* 108 U. S. 526, 2 Sup. Ct. 832, 27 L. ed. 812.)

Specific authority for that purpose is required. (*Home Tel. & Tel. Co. v. City of Los Angeles,* 211 U. S. 265, 29 Sup. Ct. 50, 53 L. ed. 176; *Louisville & Nashville R. Co. v. Mottley,* 219 U. S. 467, 31 Sup. Ct. 265, 55 L. ed. 297.)

Contracts must be understood as made in reference to the possible exercise of the rightful authority of the government, and no obligation of a contract can extend to the defeat of legitimate government authority. (*Addyston Pipe & Steel Co. v. United States,* 175 U. S. 211, 229, 20 Sup. Ct. 96, 44 L. ed. 136; *Legal Tender Cases,* 12 Wall. (U. S.) 550, 20 L. ed. 311; *Fitzgerald v. Grand Trunk Co.,* 63 Vt. 169, 22 Atl. 76, 13 L. R. A. 70.)

"Until the legislature provides the method for fixing rates, the contract between the parties will govern." (*Jack v. Village of Grangeville,* 9 Ida. 291, 74 Pac. 969.)

Rates may be established from time to time as the legislature may by law provide. (*Zanesville v. Zanesville Gas Light Co.,* 47 Ohio, 1, 23 N. E. 55.)

In the case at bar defendant took his franchise under a constitutional provision which commanded the legislature to provide by law the manner in which reasonable maximum rates may be established (sec. 6, art. 15), and the contract was made subject to the possibility of its exercise as it was expressed by the subsequent statute. (*Tampa Waterworks Co. v. Tampa,* 199 U. S. 241, 26 Sup. Ct. 23, 50 L. ed. 170, and cases cited.)

Although a city is given power to contract for a water supply, the legislature may subsequently supply a manner of readjusting or fixing rates. (*City of Danville v. Danville Water Co.,* 178 Ill. 299, 69 Am. St. 304, 53 N. E. 118, 180 Ill. 235, 54 N. E. 224, 186 Ill. 326, 57 N. E. 1129, 180 U. S. 619, 21 Sup. Ct. 505, 45 L. ed. 696; *Freeport Water Co. v. Freeport,* 180 U. S. 587, 21 Sup. Ct. 493, 45 L. ed. 679; *Knoxville Water Co. v. City of Knoxville,* 189 U. S. 433, 23 Sup. Ct. 531, 47 L. ed. 887.)

The foregoing cases hold that a constitutional provision such as our own is self-executing to the extent that contracts made after it went into effect are subject to the possibilities of the exercise of the power conferred on the legislature by such provision.

The manner of fixing rates prescribed by ordinance No. 86 is unreasonable, *ultra vires* and void. (*Knoxville v. Knoxville Water Co.,* 212 U. S. 1, 29 Sup. Ct. 148, 53 L. ed. 371; *Contra Costa Water Co. v. City of Oakland,* 159 Cal. 323, 113 Pac. 668.)

A former judgment between the same parties is a bar to the maintenance of the second action only when the causes of action in the two suits are identical. (23 Cyc. 1216.)

"A finding or judgment upon a point or issue which was immaterial to the decision of the case does not make it *res adjudicata.*" (23 Cyc. 1309.)

"A judgment is not conclusive upon any point which must necessarily have been excluded from consideration in the case as being beyond the jurisdiction of the particular court." (23 Cyc. 1317; *Hughes v. United States,* 4 Wall. (U. S.)

237, 18 L. ed. 303; *Walden v. Bodley,* 14 Pet. (U. S.) 156, 10 L. ed. 398.)

"The reasoning of the court forms no part of the judgment as regards its conclusive effect, nor are the parties bound by remarks made or opinions expressed by the court in deciding the cause which do not necessarily enter into the judgment." (23 Cyc. 1218; *Citizens' Bank v. Brigham,* 61 Kan. 727, 60 Pac. 754; *Braun v. Wisconsin Rendering Co.,* 92 Wis. 245, 66 N. W. 196; *Brown v. McKie,* 185 N. Y. 303, 78 N. E. 64; *Fulton v. Hanlow,* 20 Cal. 450; *People v. Johnson,* 38 N. Y. 63, 97 Am. Dec. 770; *Barnett v. Smart,* 158 Mo. 167, 59 S. W. 235.)

When the constitution provides for the fixing of rates or compensation, it means reasonable rates and just compensation. (*San Diego etc. Co. v. National City,* 74 Fed. 79, 174 U. S. 739, 19 Sup. Ct. 804, 43 L. ed. 1154; *Palatka Waterworks v. City of Palatka,* 127 Fed. 161; *Montezuma Town v. Montezuma Waterworks Co.,* 39 Colo. 166, 89 Pac. 794; *Spring Valley Waterworks Co. v. San Francisco,* 124 Fed. 574.)

The contention that members of the city council are agents of the people and their action in fixing rates for a water company is violative of the principle that no man can judge his own case, is untenable. (*Rogers Park Water Co. v. Fergus,* 178 Ill. 571, 53 N. E. 363, 180 U. S. 624, 21 Sup. Ct. 490, 45 L. ed. 702.)

George E. Gray, and N. M. Ruick, for Defendant.

The contract referred to was founded upon a consideration, is within the power of the city to make, is not contrary to public policy and is reasonable. (*Los Angeles v. Los Angeles Water Co.,* 177 U. S. 558, 20 Sup. Ct. 736, 44 L. ed. 886.)

The city of Pocatello, in the matter of a new adjustment of rates, is bound to pursue the course provided by the ordinance. (*Walla Walla v. Walla Walla Water Co.,* 172 U. S. 1, 19 Sup. Ct. 77, 43 L. ed. 341.)

"Sections 3 and 4 of that ordinance are a substantial part of that contract, and are for that reason not affected by the subsequent statute of March 16, 1907." (*Pocatello v. Murray,* 173 Fed. 382; *National Waterworks Co. v. Kansas City,* 62 Fed. 853, 10 C. C. A. 653, 27 L. R. A. 827; *Santa Ana Water Co. v. San Buenaventura,* 56 Fed. 339; *Los Angeles City Water Co. v. Los Angeles,* 88 Fed. 720.)

The offer of the city, which had been accepted by the water company, was a contract which could not be impaired by the subsequent act of the city. · (*New Orleans Gas Light Co. v. Louisiana Light etc. Co.,* 115 U. S. 650, 6 Sup. Ct. 252, 29 L. ed. 516; *Omaha Water Co. v. Omaha,* 147 Fed. 1, 8 Ann. Cas. 614, 77 C. C. A. 267, 12 L. R. A., N. S., 736.)

In agreeing to the mode provided in the ordinance in question for fixing rates, the city exercised, rather than renounced, its authority to fix rates. (*Vicksburg v. Vicksburg Waterworks Co.,* 206 U. S. 496, 27 Sup. Ct. 762, 51 L. ed. 1155; McQuillan on Municipal Ordinances, sec. 584; *State v. Cincinnati Gas Light & Coke Co.,* 18 Ohio St. 262.)

A state may, in matters of proprietary rights, exclude itself from the right to make regulations of this kind or authorize municipal corporations to do so, when the power is clearly conferred. (*Vicksburg v. Vicksburg Waterworks Co., supra,* and cases cited.)

In contracting for the enlargement of its water system, a municipality is exercising its proprietary or business powers, and is subject to the same rules of law that govern the agreements of private corporations, and its contracts bind its successive sets of officers. (*Pike's Peak Power Co. v. City of Colorado Springs,* 105 Fed. 1, 44 C. C. A. 333; *Los Angeles v. Los Angeles Water Co., supra.*)

The validity of the contract cannot be impeached or impaired by the enactment of a law by the legislature which went into effect some three months after the contract was made. (*Bellevue Water Co. v. City of Bellevue,* 3 Ida. 739, 35 Pac. 693.)

There was no law respecting rates in existence at the time the ordinance was passed which had any application to indi-

viduals supplying cities or villages with water. (*Jack v. Village of Grangeville,* 9 Ida. 291, 74 Pac. 969.)

"The grant of a right to supply gas or water to a municipality is the grant of a franchise vested in the state, in consideration of the performance of a public service, and after performance by the grantee is a contract protected by the constitution of the United States against state legislation to impair it." (*Walla Walla v. Walla Walla Water Co., supra; New Orleans Gas Co. v. Louisiana Light Co., supra; New Orleans Water Co. v. Rivers,* 115 U. S. 674, 6 Sup. Ct. 273, 29 L. ed. 525; *Tammany Waterworks v. New Orleans Waterworks,* 120 U. S. 64, 7 Sup. Ct. 405, 30 L. ed. 563; *Crescent City Gas Light Co. v. New Orleans Light Co.,* 27 La. Ann. 138; *Little Falls E. & W. Co. v. City,* 102 Fed. 663, citing many United States cases; *Griffith v. Vicksburg Water Co.,* 88 Miss. 371, 8 Ann. Cas. 1130, 40 So. 1011; *Fidelity T. & G. Co. v. Fowler Water Co.,* 113 Fed. 560.)

A cause of action is *res adjudicata* as to adverse parties and their respective privies, if a judicial tribunal having jurisdiction has finally adjudicated upon the merits of the whole or any part of the cause. (Van Fleet, Former Adjudication, sec. 1; 23 Cyc. 1215; *New Orleans v. Citizens' Bank,* 167 U. S. 371, 17 Sup. Ct. 905, 42 L. ed. 202; *Last Chance Min. Co. v. Tyler Min. Co.,* 157 U. S. 683, 15 Sup. Ct. 733, 39 L. ed. 859, 18 Morr. Min. Rep. 205; *So. Pac. R. Co. v. United States,* 168 U. S. 1, 18 Sup. Ct. 18, 42 L. ed. 355.)

"If from the decree in a cause there be uncertainty as to what was really decided, resort may be had to the pleadings and to the opinion of the court, in order to throw light upon the subject." (*National Foundry etc. Co. v. Oconto Water Supply Co.,* 183 U. S. 216, 22 Sup. Ct. 111, 46 L. ed. 157; *Legrand v. Rixey's Admrs.,* 83 Va. 862, 877, 3 S. E. 864; *Last Chance Min. Co. v. Tyler Min. Co., supra.*)

The application of the act of March 16, 1907, section 2839, in this case would operate to deprive defendant of his property without due process of law, contrary to both the state and federal constitutions. (*C. M. & St. Paul R. v. Minnesota,* 134 U. S. 418, 10 Sup. Ct. 462, 33 L. ed. 970; *Agua*

*Pura Co. v. City of Las Vegas,* 10 N. M. 6, 60 Pac. 208, 50 L. R. A. 224.)

"There is no distinction between a corporation and an individual in regard to liability under a contract. A corporation cannot avail itself of the benefits of a contract and, when called upon to meet its obligations thereunder, set up the plea of *ultra vires.*" (*Bellevue Water Co. v. Bellevue,* 3 Ida. 739, 35 Pac. 693; *Los Angeles Water Co. v. Los Angeles,* 103 Fed. 711; *Meyer v. Brown,* 67 Cal. 589, 26 Pac. 281.)

The "value" of a water system in operation is not confined to the value of the things going to make up the system, but its owner is entitled to its value as a "going concern." (*Omaha v. Omaha Water Co.,* 218 U. S. 180, 30 Sup. Ct. 615, 54 L. ed. 991.)

AILSHIE, J.—This is an application praying for the issuance of a writ of mandate directed to the defendant commanding and requiring him to appoint commissioners in conformity with the provisions of sec. 2839 of the Rev. Codes, for the purpose of conferring and acting with the commissioners appointed by the plaintiff and fixing and determining rates to be charged by defendant for water furnished to the plaintiff city and the inhabitants thereof.

It appears that the defendant, James A. Murray, is doing business under the name and style of the Pocatello Water Co., and that as such he is the owner of the water system which supplies the plaintiff city and the inhabitants thereof. The city alleges that acting through its city council on the 6th day of July, 1911, it determined and declared by proper resolution that the charges and rates for water service as supplied by the water company were "not fair, equitable or reasonable, and that a commission should be appointed pursuant to the provisions of the section 2839, Revised Codes of Idaho, 1909, to fix and determine the rate to be charged for water and water service to said city and its inhabitants"; and that it thereupon appointed two commissioners for the purpose of conferring and acting in conjunction with commissioners to be appointed under the provisions of the statute

by the water company; that thereafter the city caused notice to be served on the defendant of the appointment of such commissioners and demanded that he appoint two commissioners to act with the commissioners so appointed by the city, and to especially represent the interests of the defendant, and that defendant has failed, refused and neglected to appoint commissioners or to take any action in conformity with the statute in this connection. The defendant demurs to the complaint and also answers. The demurrer is on the ground of insufficient facts to constitute a cause of action. The plaintiff has also demurred to the answer and separate defense of the defendant on various grounds, chief of which is that the answer does not state facts sufficient to constitute a defense to the cause of action. The pleadings present the issues of law and raise such questions as must necessarily be determinative and decisive of this case.

The answer raises three principal questions of law which must be determined. First, it sets up Ordinance No. 86 of the city of Pocatello, and alleges that the defendant, relying upon the provisions of that ordinance as a contract, invested his money in extending his waterworks and system and that he is not subject to the provisions of the statute, sec. 2839, for the reason that the statute was passed subsequent to the passage of Ordinance No. 86 and has the effect of impairing the contract and depriving him of his property without due process of law. Second, he pleads *res adjudicata,* in that he claims the same questions here raised have been adjudicated in the case of *City of Pocatello v. Murray,* 173 Fed. 382, by the circuit court of the United States for the district of Idaho; and, third, he pleads another action pending.

Ordinance No. 86 was passed June 1, 1901, and opens with a preamble reciting the fact that the franchise had previously been granted to Murray and his associates for the term of fifty years, and that they had complied with the provisions of the contract in constructing a water system and that the village of Pocatello had since grown into a city of the second class, and that subsequently a commission had been appointed which had established rates to be charged for the use of water

and that, "Whereas the rates and charges so fixed and continued are now deemed and considered to be fair, equitable, reasonable, and just, and will continue to be fair, equitable, reasonable and just, in the near future," and that James A. Murray has succeeded to the exclusive ownership of all the property of the company, and "Whereas, the present supply of water furnished by said water system is deemed inadequate for the present and future need of said city, and said James A. Murray agrees to bring in the waters of Mink creek and to make all extensions of street mains warranted by the growth of said city, thereby necessitating the laying of several miles of pipe at a large additional expenditure of money; and,

"Whereas, said James A. Murray, before incurring so great an additional outlay, as a condition precedent to the expense of laying said pipe-line, desires to be protected against unreasonable or arbitrary changes in the rates and charges for water and water service, and asks some reasonable assurance that such unreasonable or arbitrary changes shall not be made; and,

"Whereas, the demand of said James A. Murray is considered reasonable and just, and it is deemed to be for the best interest of the city of Pocatello, to extend and give the assurance asked for;

"Now, therefore, be it ordained by the Mayor and Council of the city of Pocatello; . . . .

"Sec. 2. The schedule of rates and charges for water and water service, both public and private, supplied and furnished by the Pocatello Water Company, to the city of Pocatello, and the inhabitants thereof, heretofore fixed and adopted by the commission duly appointed and constituted, whose report was received, filed and adopted on or about the first day of September, 1896, and now in full force and effect within the said city of Pocatello, is hereby declared to be fair, equitable, reasonable, and just, and shall hereafter continue to be the schedule of rates and charges for water service by the said James A. Murray, for both public and private uses, except as hereinafter stated, to wit: . . . .

"Sec. 3.   The foregoing rates and charges are hereby adopted by the city of Pocatello, by and for itself, and as trustees for the use and benefit of all private consumers of water within the corporate limits of said city for a period of five years from and after the passage and approval of this ordinance.   At the expiration of said time, if the earnings of said water system shall exceed five per cent above reasonable expenses upon the value of said water system as then agreed upon, or as may be ascertained as hereinafter provided, then the rates as set forth in the 'Schedule of Water Rates' of section Two of this Ordinance, may be readjusted so as to yield not less than five per cent above reasonable expenses on the valuation, but no readjustment shall hereafter be made that will yield less than five per cent above reasonable expenses, on the value of the investment ascertained as hereinafter provided for in section four.

"Sec. 4.   If, at the expiration of five years, or at any time thereafter, it should be deemed necessary to readjust rates under the provisions of sec. 3, and if the city of Pocatello and the said James A. Murray, or his successors or assigns, cannot agree upon the value of said water system, for the purpose of such readjustment, then the value of said water system shall be ascertained and determined in the following manner, to wit:

"A committee of four experienced and disinterested hydraulic engineers who must be members of the American Society of Civil Engineers, shall be selected, two by the city of Pocatello, and two by said James A. Murray, or his successors or assigns, and the following questions shall be submitted to them:  For what sum can the water system of James A. Murray be now duplicated?  If a majority of the four cannot agree, they shall select a fifth, and if they cannot agree upon a fifth, they shall request the president of the American Society of Civil Engineers to appoint a fifth member.   The decision of a majority of the committee so selected shall fix the value of said water system for the purpose of readjusting said rates and such decision shall be final. . . . ."

Ordinance No. 86, from which the foregoing provisions are quoted, was adopted prior to the passage by the legislature of sec. 2839 of the Rev. Codes, as the same is now in force and effect, and under which it is sought to appoint commissioners and fix rates.

Before considering the question of the effect of this legislation on Ordinance No. 86 of the plaintiff city, we will consider the question of the plea of *res adjudicata* which has been interposed, because, if that is well taken, it is unnecessary to discuss or consider any other question.

The case of *City of Pocatello v. Murray,* 173 Fed. 282, was a suit in equity filed in the circuit court of the United States, and the prayer of the bill as stated by the judge who wrote the opinion was "that the court fix and promulgate reasonable rates and charges for water to be furnished by the defendant under his franchise to the plaintiff and its inhabitants, 'for the period of three years next ensuing from the date of the court's order and judgment in the premises, and adjudge and decree that the same, as fixed, made, and promulgated, are just and reasonable, and that defendant be restrained and enjoined from making, fixing, or promulgating any other rate or rates, charge or charges, for water so to be furnished for said period of time, and from collecting or receiving any other or greater rate or rates, charge or charges, for water during said time.' " "The defendant," says the court, "has demurred to the bill upon the ground that it does not state a cause of action entitling the complainant to any equitable relief, and also upon the ground that the bill is multifarious." The court then proceeds to waive aside the objection of multifariousness and holds without discussion or citation of authority that the act of March 16, 1907 (sec. 2839, Rev. Codes), had no application to the provisions of Ordinance No. 86 of the city of Pocatello, and could not abrogate the provisions thereof and provide any different method for the appointment of commissioners and fixing of rates than that prescribed by the ordinance, and suggested that to attempt to do so would be in violation of sec. 10, art. 1, of the federal constitution. The court then proceeds to what

appears to have been considered the real question upon which he determined that case. The demurrer to the bill was sustained on the ground that the court was without jurisdiction to fix and promulgate the water rates and charges which the defendant shall have the right to collect during the next three years, under his franchise. The fixing of such rates, when not a matter of contract, "is a legislative or administrative, rather than a judicial, function," said the court.

Entering upon the discussion of this latter question, on which the case seems to have really been disposed of, the court said: "But I am further of the opinion that even if it should be conceded that the statute of Idaho above referred to is applicable to the contract under which the defendant is supplying water to the city of Pocatello, and so prescribes the method by which that city may change the schedule of water rates named in the ordinance, this court would still be without jurisdiction to fix and promulgate the water rates and charges, which the defendant shall have the right to collect," etc.

While the court there took occasion to consider the effect of the statute (sec. 2839) on the ordinance in question and expressed the view that the statute was inoperative as against that ordinance, still it is clear to us that the court disposed of the case on the sole ground of jurisdiction. As we understand it, where a case is disposed of on the ground that the court has no jurisdiction to hear and determine the matter, it has no jurisdiction to pass upon any question except the jurisdictional question. (*Fulton v. Hanlow,* 20 Cal. 450; *Barnett v. Smart,* 158 Mo. 178, 59 S. W. 235; *Walden v. Bodley,* 14 Pet. (U. S.) 156, 10 L. ed. 398; *Hughes v. United States,* 4 Wall. (U. S.) 237, 18 L. ed. 303; *Brown v. McKie,* 185 N. Y. 303, 78 N. E. 64; 23 Cyc. 1218, 1309, 1317.) It would therefore follow that the only matter in that case that could become *res adjudicata* in the case at bar would be that a circuit court of the United States had no equitable jurisdiction to fix and promulgate water rates and charges which might be demanded and collected by a person exercising a franchise and supplying a city and its inhabitants thereof

with water. That discussion and determination would have no application to a state court, for the reason that the distinctions between actions at law and suits in equity still prevail in the federal courts, and a federal court of equity has no power to grant relief at law nor has a law court any power to grant equitable relief; but such is not the case in the state courts, because both legal and equitable relief are granted by the same court, and no importance is given to the question of the manner or form of pleading a cause of action so long as the facts pleaded entitle the pleader to relief of any kind. (Const., art. 5, sec. 1; *Staples v. Rossi,* 7 Ida. 618, 65 Pac. 67; *Coleman v. Jaggers,* 12 Ida. 125, 118 Am. St. 207, 85 Pac. 894; *Dewey v. Schreiber Imp. Co.,* 12 Ida. 280, 85 Pac. 921.)

The judgment and order of the circuit court of the United States in dismissing the bill in *City of Pocatello v. Murray* is no bar to the present action and does not estop the city from maintaining this action.

Having determined that the decision of the federal court in the *City of Pocatello v. Murray* is not conclusive of the questions raised in this case and does not estop the city from raising the question here presented, we now pass to the vital question in the case, namely, the effect of sec. 2839, Rev. Codes, on the provisions of Ordinance No. 86 of the city of Pocatello, and whether or not rates may be established under the statute or must be fixed under the terms of the ordinance for the full period of fifty years as therein prescribed. No such question as now confronts us has ever before been presented to this court, and so it is a question of first impression in this state.

At the very inception of our consideration of this phase of the case, our attention is directed to the provisions of the constitution which were in force and effect at the time of the passage of Ordinance No. 86, and at the time defendant received his franchise and constructed and extended his water system. Sec. 2, art. 15, of the constitution provides as follows:

"The right to collect rates or compensation for the use of water supplied to any county, city, or town, or water district,

or the inhabitants thereof, is a franchise, and cannot be exercised except by authority of and in the manner prescribed by law.''

It should be observed that section 1 of this article of the constitution declares that ''the use of all waters'' within this state which may be ''sold, rented or distributed'' is ''declared to be a public use and subject to the regulation and control of the state in the manner prescribed by law.'' Sec. 6 of art. 15 is as follows:

''The legislature shall provide by law the manner in which reasonable maximum rates may be established to be charged for the use of water sold, rented or distributed for any useful or beneficial purpose.''

It will therefore be seen from the foregoing provisions of the constitution that, in the first place, the use of all waters within this state that may ''be sold, rented or distributed is a public use, and subject to the regulation and control of the state in the manner prescribed by law.'' When Murray procured his contract for supplying the city of Pocatello and its inhabitants with water and undertook to deliver water to the city and its inhabitants and charge and collect rates or tolls, he immediately entered upon the discharge of the duty of supplying a ''public use,'' and he was immediately chargeable with notice of the terms and conditions of the constitution to the effect that the business in which he was engaging and the service which he was undertaking to render would be forever ''subject to the regulation and control of the state in the manner prescribed by law,''—*not the manner already prescribed by law, but in the manner that might from time to time be prescribed by the law-making power of the state,—a continuing and ever-existing power.* His undertaking and engagement was further impressed with the terms of sec. 2, art. 15, *supra,* to the effect that his right to collect rates or compensation for such a service ''is a franchise and cannot be exercised except by authority of and in the manner prescribed by law,''—not the manner already prescribed by law, but in such manner as might from time to time be prescribed by the supreme law-making power of the state (the legis-

lature),—a continuing and ever-present power which might at any time be called into exercise. In addition to all this, however, the people had already by direct legislation in the fundamental law of the state ordained by sec. 6, art. 15, of the constitution, above quoted, that "the legislature shall provide by law the manner in which reasonable maximum rates may be established to be charged for the use of water sold, rented or distributed for any useful or beneficial purpose."

When Murray entered into his contract with the plaintiff city and when Ordinance No. 86 was passed prescribing the manner and method of establishing rates to be charged, he had notice that the legislature was vested with the supreme power of providing the manner in which reasonable maximum rates might be established, and that any contract he might make or that any ordinance which a municipality of this state could enact might be altered, changed or entirely abrogated by such legislation as the law-making power of the state might subsequently ordain. It is a fundamental principle of law that every man is supposed to contract with the laws of the jurisdiction in mind and subject to their provisions. It is unreasonable to suppose that parties can so contract as to hamper or restrain future legislation or avoid the operation of a statute or contract themselves out from under the provisions of the constitution. If contracts could be made so as to anticipate and avoid the effect of an act of the legislature passed in the exercise of its constitutional power and authority, we would no longer have a government of law, but rather a government under special contracts, and the people would have no protection left. This is especially true with reference to the municipalities created by legislative authority. Contracts such as the one under consideration affecting the interests of the people and imposing exactions and burdens upon them may be honestly and fairly entered into and at the time of their execution be equitable and just, and yet before the lapse of fifty years or a fourth of that time, by reason of changed conditions, become inequitable, unjust and oppressive upon the people on whom the exaction is laid, and it is for this very reason that the people have reserved to them-

selves the power to regulate and prescribe the method of fixing rates in such matters. This principle is peculiarly applicable to a person who undertakes the discharge of a public duty or who undertakes a business or engagement to serve the public for private gain. The foregoing provisions of the constitution were as much a part of Murray's contract with the city of Pocatello as if they had been written bodily into the contract. The ordinance of the city could not abrogate them, and should be read in the light of and subject to the supreme law of the state. It is clear to our minds that the city had no authority whatever to enter into a contract with defendant providing a schedule of rates to be charged for supplying water to the inhabitants of the city or providing a manner and method of subsequently fixing and determining rates which would run counter to any statute then in force or to any statute that the legislature in the exercise of its constitutional powers might subsequently adopt. This ordinance should be read and understood as providing only a temporary method of ascertaining and fixing rates to remain in force and effect until such time as the supreme law-making power of the state, in the exercise of the duty imposed upon it by the constitution, might from time to time prescribe the manner and method of determining such rates. The legislature accordingly, by act of March 16, 1907, amending sec. 2711 of the Rev. Stats. of 1887, which amendment is now sec. 2839 of the Rev. Codes, prescribed the manner and method of establishing rates to be charged by persons supplying water to cities and towns. This was not an impairment of the contract, and therefore in violation of sec. 10, art. 1, of the constitution of the United States, nor can it be said that it is a taking of defendant's property without due process of law in violation of sec. 1 of the fourteenth amendment to the federal constitution.

In *Jack v. Village of Grangeville,* 9 Ida. 291, 74 Pac. 969, this court held that under subd. 12 of sec. 2230 of the Revised Statutes of 1887 and the acts of February 17 and March 4, 1893 (1893 Sess. Laws, 34 and 97), a village had the power and authority to contract for a supply of water, and atten-

tion was there specifically called to the provisions of sec. 6, art. 15 of the constitution, and the fact that the legislature had not yet provided a method by which rates or compensation could or should be ascertained and fixed, "except as to water and canal corporations," and that, "Until the legislature provides a method for fixing rates, the contract between the parties will govern." The syllabus to the Jack case was written by the court, and we find the following statements of law contained in paragraphs 7 and 8 thereof:

"7. Under section 6, article 15, state constitution, it is the duty of the legislature to provide by law the manner in which reasonable maximum rates may be established to be charged for the use of water sold for or rented for a useful or beneficial purpose, and until that is done the owner and user may make such contracts therefor as may to them seem just and reasonable."

"8. Under the laws of this state, such a contract as that under consideration may be made to continue for thirty years, except that rates may be established from time to time as the legislature may by law provide."

In the case at bar, there is no doubt but that under the provisions of the act of February 10, 1899 (1899 Sess. Laws, p. 192), and particularly section 39 thereof, the city of Pocatello had the power and authority to pass an ordinance and enter into a contract with defendant for the establishment of a water system and supplying water to the city and its inhabitants, but any such contract as it was within the power of the city to make was subject always to the power and authority of the legislature to prescribe a method of determining and establishing reasonable, maximum rates to be charged as water rental.

At the time of entering into this contract, and at all times since and now, the defendant has had, and still has, the assurance of the whole people of this commonwealth, expressed through their constitution (sec. 6, art. 15), that the rates to be established shall always be "reasonable maximum rates." The assurance that the defendant shall always be allowed to charge and collect *"reasonable maximum rates"* is

a guaranty given him by the state that his property shall not and will not be taken without due process of law, and that he will be entitled and allowed to collect such rates as will guarantee to him.a reasonable profit and income on his investment. He has no vested right to charge an unreasonable or an unconscionable rate while exercising a franchise to serve a public use. To deprive a person engaged in such a public service of the power to charge and collect an unreasonable, extortionate or unconscionable rate deprives him of no right, natural or acquired, and cannot be the impairment of a contract within the purview and meaning of sec. 10, art. 1, of the federal constitution, nor is it depriving him of property without due process of law in violation of the fourteenth amendment.

Sec. 5 of the ordinance above quoted prescribes the method of selecting a commission for the purpose of ascertaining the value of the plant and system in the event it should be desired to re-establish rates. The method therein provided is wholly immaterial for the purposes of this decision, so long as it provides a method different from that prescribed by the statute. It is noteworthy, however, that the method therein prescribed is unique and unjust. It enumerates the things that should be taken into consideration and be valued, and among others specifies "rights of way, natural and acquired advantages, franchises." Now, by the statute of this state, rights of way for such purposes are granted over all public highways without requiring any compensation whatever (sec. 2840, Rev. Codes), and this was true with reference to the franchise within the corporate limits of Pocatello to construct the system, and notwithstanding this fact, these rights of way and this franchise were to be valued and assessed for the purpose of determining rates to be charged. In other words, Murray proposed to collect rates sufficient to make a five per cent income on the value of rights of way and franchises that the public had given him.

It is also provided by sec. 3 of the ordinance that no readjustment of rates should ever be made that would yield less than five per cent above reasonable expenses on the value of

the investment as ascertained by the provisions of sec. 4. Now, five per cent income on the entire investment was probably reasonable and fair when Pocatello was a mere village and the defendant had a comparatively small amount of money invested. But as the village has grown into a city of some ten thousand or more inhabitants and the defendant has invested several times the original amount of money in extending and enlarging his water system, five per cent on so large an investment might be excessive. The amount of the investment, the conditions of the times, the extent of the use or the number of consumers, the permanence and security of the investment, are all elements that would enter into the question of what would constitute a reasonable income. It is notorious that men who have money to loan or invest expect and demand a higher rate of interest on a small investment than they do on a large investment, the security being sufficient and adequate in each instance. For such reasons, the power ought to always rest in the people or the law-making power to re-establish and readjust rates from time to time in order to meet the changed conditions. It is also noteworthy that the commissioners provided for by the ordinance all come from one class, and may not and probably could not be citizens of Idaho or subject to the jurisdiction of our courts or process, and that no provision is made for enforcing any action by such commission.

The views hereinbefore expressed are to our minds quite conclusively supported by authorities to which we will briefly call attention.

In *City of Tampa v. Tampa Waterworks Co.,* 45 Fla. 600, 34 So. 631, the city of Tampa entered into a contract and passed ordinances authorizing the predecessors of the waterworks company to construct a water system, and agreed to pay the company fixed rates for the use of hydrants for city purposes for a period of thirty years, and also fixed a schedule of maximum rates to be charged private consumers for the full period of thirty years. At the time of the passage of the ordinances and entering into the contract, the state of Florida had not adopted a statute prescribing maximum rates

to be charged in such cases or prescribing a method of fixing or establishing such rates, but subsequently the legislature passed an act authorizing municipalities of the state to adopt ordinances fixing reasonable rates to be charged to the municipality and its inhabitants. In accordance with the authority of that statute, the city council passed an ordinance fixing maximum rates to be charged by the waterworks company and these rates were lower than the rates which had been previously fixed by ordinance and contract. The waterworks company sought to enjoin and restrain the enforcement and execution of this ordinance as a violation of its contract rights and as an attempt to take its property without due process of law. The city relied on the provisions of sec. 30, art. 16, of the state constitution, which declared that "the legislature is invested with full power to pass laws for the correction of abuses and to prevent unjust discriminations and excessive charges by persons and corporations engaged as common carriers in transporting persons and property, or performing other services of a public nature, and shall provide for enforcing such laws by adequate penalties or forfeitures." The court held that the provision of the constitution must be read into the ordinance and contract, and that it became a part of the contract between the city and the water company, and that the company had accordingly taken its franchise and constructed its plant and system with the understanding and notice that the power continuously rested in the legislature to enact a law regulating charges and providing for the establishment of maximum rates to be charged by any person, company or corporation performing such a service or exercising such a public use. Among other things, the court said:

"*The power mentioned in this section is full power; a continuing, ever-present power.* Being irrevocably vested by this section, the legislature cannot divest itself of it. Neither can it bind itself by contract nor authorize a municipality—one of its creatures—to bind it by contract, so as to preclude the exercise of this power whenever in its judgment the public exigencies demand its exercise. Full power cannot exist,

if by contract that power can be curtailed or impaired. . . . . But every charter granted and every contract made by the legislature, or by a municipality under its authority, are accepted and made subject to and in contemplation of the possibility of the subsequent exercise of the power to prevent excessive charges, which by this section is unalterably and irrevocably vested in the legislature. The section not only becomes a part of every such contract, as much so as if written therein, but by implication it denies the authority of the legislature to bind itself, either by a contract of its own making or one made by a municipality under its authorization, not to exercise the power thereby recognized whenever in its wisdom it should think necessary so to do. The effect of this section is to reserve to the legislature full power at all times, notwithstanding any supposed contract not to exercise it, to require water companies and others mentioned in the section to comply with their common-law obligation to supply their customers at reasonable rates; and, such being its construction, we do not see that the contract between the water company and the city is impaired by the ordinance of December 20, 1901, nor that the water company is thereby deprived of its property without due process of law.''

This case was subsequently taken by writ of error to the supreme court of the United States, and the judgment and decree of the supreme court of Florida was affirmed. (*Tampa Waterworks Co. v. Tampa*, 199 U. S. 241, 26 Sup. Ct. 23, 50 L. ed. 170.) Mr. Justice Holmes, in affirming the judgment of the supreme court of Florida and commenting on the constitutional provision hereinbefore quoted, said:

''It says that the power shall be 'full power'; and the adjective may be read as meaning a power which cannot be cut down. When it goes on to require that the legislature 'shall' provide for enforcing the laws which it is expected to pass for the correction of abuses and the prevention of excessive charges, the argument is strengthened that it means to impose a duty which the legislature is not at liberty to give up. Such was the opinion of the supreme court of Florida, and

we have yielded to the judgment of the state court upon more doubtful questions than this.

"The case stands on the single ground of contract. There is no allegation that the rates fixed by the new ordinances are unreasonable, or that their effect will be to destroy or considerably impair the value of the plaintiff's property. Although the fourteenth amendment is invoked, no case is made out under it on any ground than that the obligation of a binding contract is impaired."

In *Home Tel. & Tel. Co. v. Los Angeles*, 211 U. S. 265, 29 Sup. Ct. 50, 53 L. ed. 176 (in trial court, 155 Fed. 554), the city of Los Angeles had granted to the telephone and telegraph company a franchise and had passed an ordinance fixing maximum rates which the company might charge during the life of the franchise. Subsequently the city passed an ordinance which it was conceded was within the powers conferred by sec. 31 of the city charter. This latter ordinance fixed a new and different method of determining rates and "required every person, firm or corporation supplying telephone service to furnish annually to the city council a statement of the revenue from, and expenditures in, the business, and an itemized inventory of the property used in the business, with its cost and value; and provided a penalty for charges in excess of the rates fixed." The company commenced its action in the circuit court of the United States for the purpose of having the city restrained and enjoined from enforcing this ordinance. The circuit court denied the application (155 Fed. 554), and its judgment was affirmed by the supreme court. In discussing the scope of the original ordinance and contract and the power of the city to fix unalterable rates to be maintained during the entire term of the franchise, the court said:

"The facts in this case which seem to us material upon the questions of the authority of the city to contract for rates to be maintained during the term of the franchise are as follows: The charter gave to the council the power 'by ordinance . . . . to regulate telephone service and the use of telephones within the city . . . . and to fix and determine the

charges for telephones and telephone service and connections.' This is an ample authority to exercise the governmental power of regulating charges, but it is no authority to enter into a contract to abandon the governmental power itself. It speaks in words appropriate to describe the authority to exercise the governmental power, but entirely unfitted to describe the authority to contract. It authorizes command, but not agreement. Doubtless, an agreement as to rates might be authorized by the legislature to be made by ordinance. But the ordinance here described was not an ordinance to agree upon the charges, but an ordinance 'to fix and determine the charges.' It authorizes the exercise of the governmental power and nothing else.''

Further on in the opinion, addressing himself to the objection that the ordinance was in conflict with the due process clause of the fourteenth amendment to the federal constitution, the court said:

''The appellant also contends that the ordinances fixing rates are wanting in due process of law, and therefore violate the fourteenth amendment of the constitution of the United States, because the section (31) of the charter, under whose authority they were enacted, does not expressly provide for notice and hearing before action. But rate legislation is purely a legislative function and, even where exercised by a subordinate body upon which it is conferred, the notice and hearing essential in judicial proceedings and, for peculiar reasons, in some forms of taxation (see *Londoner v. Denver*, 210 U. S. 373, 28 Sup. Ct. 708, 52 L. ed. 1103), would not seem to be indispensable.''

In passing, we will here digress and incidentally note a further objection which was made on the oral argument in this case, since that objection is squarely met in the Home Tel. & Tel. Co. case, *supra*. The objection was made that our statute, sec. 2839, Rev. Codes, provides that the commissioners appointed shall be ''taxpayers of the city,'' and that such a commission would not be a fair, impartial and unprejudiced tribunal, for the reason that they would be in a

measure passing upon their own case. In considering a like objection in the Home Tel. & Tel. case, the court said:

"The appellant further insists that the city council is not an impartial tribunal, because, in effect, it is a judge in its own case. It is too late, however, after the many decisions of this court which have either decided or recognized that the governing body of a city may be authorized to. exercise the rate-making function, to ask for a reconsideration of that proposition."

Returning to the main question, there is perhaps no case that more clearly states the underlying principle involved in this case than the case of *Louisville & N. R. Co. v. Mottley,* 219 U. S. 467, 31 Sup. Ct. 265, 55 L. ed. 297, wherein the supreme court of the United States considered the effect of an act of Congress upon a previously made contract which was in all respects legal and valid at the time it was entered into. While that case was dealing with the effect of an act of Congress and the power conferred by the constitution on Congress to legislate in regulating interstate commerce, and in that respect differs from the case at bar, still the principle discussed by the learned justice in that opinion, and to which all the justices of that court gave their assent, is so apt and nearly identical with the principle of law here involved, as we understand it, that the opinion in that case has peculiar force and binding effect here. It is also one of the most recent expressions of that court on this principle of law. In the latter case, the Mottleys in 1871 entered into a contract with the Louisville & N. R. R. Co. whereby they agreed to and did relinquish their claim against the company for damages sustained in a collision, and in consideration thereof the company agreed to annually thereafter, during the lifetime of the Mottleys, issue to them annual passes over the company's entire railway system, either then constructed or that might be subsequently constructed by the company, and in accordance with this agreement the company continued to issue annual passes to the Mottleys until 1907. In the latter year, the company refused to issue any further passes under the agreement, for the reason assigned by the company

that it was prohibited from doing so by the provisions of the interstate commerce act of Congress of June 29, 1906 (34 Stat. at Large, 838; U. S. Comp. Supp. 1909, p. 1169). The Mottleys thereupon instituted a suit to compel the railroad company to comply with its contract and issue passes. The state circuit court entered a judgment requiring the railroad company to issue to the Mottleys the passes in accordance with the contract of 1871, and upon appeal to the court of appeals of the state of Kentucky, the judgment was affirmed. (*Louisville etc. R. Co. v. Mottley,* 133 Ky. 652, 118 S. W. 982.) The judgment of the state court was reversed on writ of error to the supreme court of the United States. The court reviewed a number of previous decisions of the supreme court and quoted with approval from the Addyston Pipe case, 175 U. S. 211, 20 Sup. Ct. 96, 44 L. ed. 136; *Scranton v. Wheeler,* 179 U. S. 141, 21 Sup. Ct. 48, 45 L. ed. 126; *Union Bridge Co. v. United States,* 204 U. S. 364, 27 Sup. Ct. 367, 51 L. ed. 523; and *Fitzgerald v. Grand Trunk R. Co.,* decided by the supreme court of Vermont (63 Vt. 169, 22 Atl. 76, 13 L. R. A. 70).

After considering the foregoing and other cases, the court said:

"These principles control the decision of the present question. The agreement between the railroad company and the Mottleys must necessarily be regarded as having been made subject to the possibility that, at some future time, Congress might so exert its whole constitutional power in regulating interstate commerce as to render that agreement unenforceable, or to impair its value. That the exercise of such power may be hampered or restricted to any extent by contracts previously made between individuals or corporations is inconceivable. The framers of the constitution never intended any such state of things to exist.

"It is said that if Congress intended by the commerce act to embrace such a case as this, then the act is repugnant to the constitution. Does the act infringe upon the constitutional liberty of the citizen to make contracts? Manifestly not. . . . .

"These authorities and principles condemn the proposition that the defendants in error had the constitutional right, pursuant to or because of the agreement of 1871, and during their respective lives, to accept and use free transportation for themselves, as passengers, on an interstate train, after Congress forbade, under penalty, any interstate carrier to demand, collect, or receive compensation for transportation, or any interstate passenger not within the classes excepted by the act, to use transportation tickets, except upon the basis fixed by the carrier's published schedules of rates. After the commerce act came into effect, no contract that was inconsistent with the regulations established by the act of Congress could be enforced in any court. The rule upon this subject is thoroughly established. It is not determinative of the present question that the commerce act, as now construed, will render the contract of no value for the purposes for which it was made."

Supporting the foregoing discussion, the court quotes from the Addyston Pipe case the following: "We do not assent to the correctness of the proposition that the constitutional guaranty of liberty to the individual to enter into private contracts limits the power of Congress and prevents it from legislating upon the subject of contracts." And again, further on in the course of the discussion, the learned judge quotes the following from the same case:

"The provision in the constitution does not, as we believe, exclude Congress from legislating with regard to contracts of the above nature, *while in the exercise of its constitutional right to regulate commerce among the states.* . . . . Anything which directly obstructs and thus regulates that commerce which is carried on among the states, whether it is state legislation or private contracts between individuals or corporations, should be subject to the power of Congress in the regulation of that commerce."

In the same opinion (the Mottley case) the court quoted from the *Legal Tender Cases,* 12 Wall. (U. S.) 550, 20 L. ed. 311, wherein the court had said:

"As, in a state of civil society, property of a citizen or subject is ownership, subject to the lawful demands of the sovereign, so contracts must be understood as made in reference to the possible exercise of the rightful authority of the government, and no obligation of a contract can extend to the defeat of legitimate government authority."

Many other authorities might be cited to the same effect as the foregoing, but most of them will be found collated and analyzed in the foregoing opinions, and their repetition here can add no additional weight to the principle we gather from them.

The defendant cites a great many cases wherein it has been held that certain legislative or municipal action taken tended to impair the obligations of previously existing contracts, and that such state or municipal action was therefore void and ineffectual. Defendant seems, however, to place his chief reliance on *City of Los Angeles v. Los Angeles Water Co.,* 177 U. S. 558, 20 Sup. Ct. 736, 44 L. ed. 886; *Walla Walla v. Walla Walla Water Co.,* 172 U. S. 1, 19 Sup. Ct. 77, 43 L. ed. 341; *City of Pocatello v. Murray,* 173 Fed. 382; and *Los Angeles Water Co. v. City of Los Angeles,* 103 Fed. 711.

The case of *City of Los Angeles v. Los Angeles City Water Co.* and the case of *Los Angeles City Water Co. v. City of Los Angeles,* both involved the validity of a contract entered into on the 22d day of July, 1868, between the city of Los Angeles on the one side and certain parties on the other, whereby the city leased its waterworks to the persons named and their assignees for a term of thirty years, and granted the right to lay pipes in the streets of the city and to sell and distribute the water for domestic purposes to the inhabitants of the city and the right to take water from the Los Angeles river for such purpose. The city also bound itself by that contract not to make any other lease, sale, contract, grant or franchise to any person or persons, corporation or company for the sale or delivery of water to the inhabitants of the city for domestic purposes during the continuance of the contract. They also contracted that the city would not reduce the water rates lower than the rates that were being

charged at the time the contract was entered into.    The first of the above-named cases held that under the constitution and statute of California, as the same had been construed by the supreme court of the state prior to the date the contract was entered into and the franchise was granted, the legislature had the right to grant a special franchise to persons and corporations, and that the legislature had by act of 1870 ratified and approved the contract which had been previously entered into by the city of Los Angeles, and that this became a valid and binding contract upon the city for the full period of thirty years.    (See comment of Mr. Justice White on Los Angeles case in dissenting opinion in *Rogers Park Water Co. v. Fergus,* 180 U. S. 629, 21 Sup. Ct. 490, 45 L. ed. 706.) The other Los Angeles case above cited, involving the same ordinance, held that after the expiration of the thirty year period the city was still· bound by the contract until such time as it took steps in conformity with the contract to abrogate and terminate the same, and that the city could not take possession of the waterworks system until it had first paid or tendered to the company the value of the improvements made in the system as the same might be agreed upon or determined in the manner prescribed by the contract and in pursuance of law.    It should be observed that in neither of those cases was there involved either a constitutional or statutory provision such as we have under consideration in this case. *In other words, there was no such provision either in the constitution or statute in force in California at the time the contract of 1868 was entered into by the city of Los Angeles.*

In the *City of Walla Walla v. Walla Walla Water Co.,* the City of Walla Walla, in March, 1887, passed an ordinance granting a franchise to the Walla Walla Water Co. to construct and maintain a water system within the city, and for that purpose to lay pipes and mains and collect rates, and agreeing to make certain payments to the company for the use of water and, among other things, stipulated and agreed that the city should not erect or maintain or become interested

in any waterworks system during the period of the franchise which ran for twenty-five years. Subsequently the city began taking the necessary steps in conformity with its charter to create a bonded indebtedness for the purpose of raising money to erect and maintain a waterworks system, and the water company filed its bill praying for an injunction restraining the city from taking further action looking to the erection or maintenance of a waterworks system, and relied upon the ordinance and contract previously granted to the water company. The case went to the supreme court of the United States, and the court rested its decision upon the provisions of sec. 10 and sec. 11 of the charter of the city of Walla Walla. By sec. 10, it was authorized to grant to any person or association the right to use the streets of the city for the purpose of laying pipes and supplying water for a period of twenty-five years; and by sec. 11, *the city was authorized to erect and maintain waterworks within the city or to authorize the erection of the same for the purpose of furnishing the city and its inhabitants with a supply of water.* The court held in effect that these grants of power were not concurrent powers, but rather alternative, and that the exercise of the power to contract with others to construct and maintain waterworks was in spirit and effect an agreement that the city itself would not erect a system during the period covered by the grant and franchise to others. The court held in effect that the doing of the one thing exhausted the power to do the other. This conclusion was based upon the theory that for the city to construct its own system would practically destroy and render worthless the system of the company erected under the contract and would thereby impair the contract.

The case of *City of Pocatello v. Murray* has already been adverted to in this opinion. It is clear that the observations of the learned judge in that opinion were not essential to the determination of the case and that the case was not disposed of on that point. On the other hand, it is equally clear that the provisions of our constitution were not called to his attention or considered by him.

As we view the matter, none of the cases relied on by defendant are directly in point in this case, nor do they support the position taken by the defendant.

The plea of another action pending is not sufficient to either require or justify an abatement of this action. The action pleaded was commenced in the district court in and for Bannock county and was transferred to the circuit court of the United States for the district of Idaho, and is now pending in that court. It appears from the answer that that action was instituted for the purpose of procuring a decree declaring the franchise granted by Ordinance No. 86 *forfeited and void by reason of the failure of defendant Murray to comply with the terms and conditions of the ordinance and franchise.* It will therefore be seen at once that the action now pending in the circuit court of the United States involves an entirely different question from the one here presented.

We conclude that the complaint states a cause of action and that the demurrer thereto should be overruled, and that the answer to the complaint does not state facts sufficient to constitute a defense and that the demurrer should be sustained. The writ will issue in accordance with the prayer of the complaint. Costs awarded to plaintiff.

Stewart, C. J., and Sullivan, J., concur.