CASE 70.—ACTION BY ERASMUS L. MOTTLEY AND WIFE AGAINST THE LOUISVILLE & NASHVILLE RAILROAD COMPANY TO COMPEL A SPECIFIC PERFORMANCE OF A CONTRACT OF CARRIAGE.— May 4, 1909.

# L. & N. R. R. Co. v. Mottley

Appeal from Warren Circuit Court.

JOHN M. GALLOWAY, Circuit Judge.

Judgment for plaintiffs, defendant appeals.—Affirmed.

1.  Statutes—Construction—Prospective Construction.— Statutes will not be given a retrospective construction, unless the language precludes a reasonable doubt that the Legislature intended a prospective construction.

2.  Carriers—Regulations — Construction —Retrospective Operation.—Act Cong. June 29, 1906, c. 3591, Sec. 1, 34 Stat. 584 (U. S. Comp. St. Supp. 1907, p. 892), prohibits any common carrier from directly or indirectly giving any interstate free transportation for passengers. Section 2 prohibits carriers from charging any different compensation for carrying passengers between points named in its tariff, as filed, than the fare specified therein, or from refunding any part of the fares, or from extending to any person any privileges except as specified in such tariff. Held, that the statute applied to the contract under which any pass, etc., was issued, and not simply to its issuance, and was not retrospective, so that it would not apply to a contract made in 1871, by which a carrier agreed to issue an annual pass to one injured, in settlement of his claim for damages, though annual passes were issued under the contract after the statute was enacted.

3.  Constitutional Law—Obligation of Contracts—Impairment—Power of Congress—Presumptions.—The federal Constitution does not inhibit Congress from impairing the obligation of contracts, but the same moral obligation not to enact such unjust laws rests upon it as upon the states, and it will be presumed that Congress did not intend to impair contract obligations, unless a clear intent to do so appears.

4.  Carriers—Statutory    Regulation—Federal    Anti-Pass   Law—
    "Free Passes."—Annual passes, issued pursuant to a con-
    tract by which a carrier agreed to issue an annual pass for
    life to one injured by it in settlement of his claim for damages,
    are not "free passes" within Act. Cong. June 29, 1906, c.
    3,591, Sec. 1, 34 Stat. 584 (U. S. Comp. St. Supp. 1907, p. 892),
    prohibiting any common carrier from directly or indirectly giv-
    ing any interstate free pass or ticket for passengers except to
    employes, nor did the contract violate section 2, prohibiting
    carriers from charging any different compensation between
    points named in its tariff than the fare specified therein, or
    from extending to any person  any  privileges,  except  as
    specified in its tariff; it not appearing that the contract dis-
    criminated in favor of the person injured.
5.  Carriers—Carriage of Passengers—Passes—Legality.—A con-
    tract made in 1871, by which an interstate common carrier
    agreed to issue annual passes for life to one injured, in
    settlement of his claim for damages, was legal and valid when
    made.

HENRY L. STONE for appellant.

SIMS, DUBOSE & RHODES of counsel.

### AUTHORITIES CITED.

Statement.—Secs. 1 and 2, Amendatory Act. to Regulate Com-
merce, approved June 29, 1906. Mottley et ux. v. Louisville &
Nashville R. Co., 150 Fed. 406-13; Louisville & Nashville R. Co.
v. Mottley et ux., 211 U. S. 31.

1. Free Passes.—Knox v. Lee and Parker v. Davis (Legal Tend-
er Cases), 12 Wall. 550-51; Bullard v. Northern Pac. R. Co., 45
Am. & Eng. R. Cases, 234, 242-3, 245, 11 L. R. A..246; 8 Cyc., at
page 997; Newport News & M. V. Co. v. McDonald Brick Co.'s
Assignee, 109 Ky. 408, 418-19; Fitzgerald v. Fitzgerald & Mallory
Construction Co., 59 N. W. 862-3; Southern Wire Co. v. St. Louis
Bridge & Tunnel Ry. Co., 38 Mo. App. 191; Fitzgerald v. Grand
Trunk R. Co. (Vt.), 22 Alt., 76-77.

2. Passenger Fare is Payable in Money.—Decisions of Interstate
Commerce Commission Relative to Railroad Passes and Free
Transportation, Senate Document No. 226, 60th Congress, First
Session, Communicated to Senate February 6, 1908, page 18;
Administrative Rulings and  Opinions  of Interstate  Commerce
Commission, Revised by order of the Commission, February 3,
1908, page 72, Rule No. 67, promulgated September 15, 1906;
Armour Packing Co. v. United States, 209 U. S. 56; Chicago Bur-
lington & Quincy Ry. Co. v. United States, Ib. 90; Kentucky &
Indiana Bridge Co. v. Louisville & Nashville R. Co., 34 Am. &
Eng. R. Cases 630, 653; Same v. Same, 37 Fed. 567; United States
v. Chicago, I. &. L. Ry. Co., 163 Fed. 114.

CLARENCE U. McELROY, WRIGHT & McELROY & G. DUN-
CAN MILLIKEN for appellees.

### SYNOPSIS.

1. The issues a. Sec. 1 of Act of June, 1906, does not cover this
case; b. Sec. 6 of Act of June, 1906, does not cover this case.

2. Construction of the Statute.—The Act of June, 1906, does not embrace, and was not intended by Congress to embrace cases like this. Even though the Act of June, 1906, is broad enough, and was, by Congress, intended to embrace this case, it is violation of the Constitution of the United States, and especially the Fifth Amendment, and is therefore not enforcible as against Appellees. Brief of Solicitor for appellant and Interstate Commerce Commission.

### AUTHORITIES CITED.

Construction of Statutes.—United States v. Kirby, 74 U. S. 7 Wall 486-7; Carlisle v. United States, 16 Wall 153; Chew Heowing v. United States, 112 U. S. 555; Holy Trinity Church v. United States, 143 U. S. 457; Bate Refrigerator Co. v. Sulzberger, 157 U. S. 37; Market Co., v. Hoffman, 101 U. S. 116; Auffmardt v. Rasin, 102 U. S. 620; Cook v. United States, 138 U. S. 181.

Constitutionality of Act of 1906, as applied to this case.— Wilkinson v. Leland, 2 Pet. 657; Osborne v. Nicholson, 13 Wall 654; Dubuque R. R. Co. &c. v. Richmond, 19 Wall 584. This case is not overruled by, but is distinguished from Addyston Pipe & Steel Co. v. United States, 175 U. S. 136.

OPINION OF THE COURT BY JUDGE BARKER—Affirming.

In 1871 the appellees, Erasmus L. Mottley and Annie E. Motley, his wife, were seriously injured in an accident occurring to one of appellant's passenger trains while they were being transported as passengers from their home, in (Bowling Green) to Louisville, Ky. In full settlement of all claims for damages on the part of the appellees, the appellant agreed, in writing, to furnish them free transportation over its line for the remainder of their lives. The contract is as follows: "Louisville, Ky., Oct. 2, 1871. The Louisville & Nashville Railroad Company, in consideration that E. L. Mottley and wife, Annie E. Mottley, have this day released said company from all damages or claims for damages for injuries received by them on the 7th of September, 1871, in consequence of a collision of trains on the road of said company at Randolph's Station, Jefferson county, Ky., hereby agrees to issue free passes on said railroad and branches, now existing or to exist, to

said E. L. Mottley and wife, Annie E. Mottley, for the remainder of the present year and thereafter to renew said passes annually during the lives of said Mottley and wife, or either of them. Thos. J. Martin, Vice President Louisville & Nashville Railroad Company. Willis Raney, Secretary. (Seal.)'' This contract was faithfully carried out by the appellant until after the enactment by the Congress of the United States, on June 29, 1906, of ''An act to amend an act, entitled an act to regulate commerce, approved February 4, 1887'' (Act June 29, 1906, c. 3591, 34 Stat. 584 [U. S. Comp. St. Supp. 1907, p. 892]), When, becoming apprehensive lest the further issuance of passes to appellees under the contract was within the prohibition of the act of Congress, it declined to carry out its agreement any further, whereupon the appellees first instituted an action for the specific enforcement of the contract in the Circuit Court of the United States for the Western District of Kentucky, where a judgment was rendered as prayed for in the petition. Mottley v. L. & N. R. R. Co. (C.C.) 150 Fed. 406. But upon appeal to the Supreme Court of the United States this judgment was reversed upon the ground of want of jurisdiction in the federal court to entertain the cause of action. See L. & N. R. R. Co. v. Mottley, 211 U. S. 149, 29 Sup. Ct. 42, 53 L. Ed.— Whereupon the appellees instituted this action in the Warren circuit court, with the result that a judgment was rendered requiring the appellant to perform the contract. To review this judgment this appeal has been prosecuted.

The Louisville & Nashville Railroad Company is a common carrier engaged in the business of interstate and intrastate commerce, and the specific performance of the contract in question involves both inter-

state and intrastate commerce. Therefore one of the questions arising upon this record is whether or not the contract is specifically enforceable under the provisions of the act of Congress before referred to, and which is fully pleaded and relied upon by the appellant as a bar to appellees' cause of action. So much of the federal statute pleaded by the appellant as is deemed necessary to be herein set forth is as follows:

"Section 1. * * * No common carrier subject to the provisions of this act shall, after January 1, 1907, directly or indirectly, issue or give any interstate free ticket, free pass, or free transportation for passengers, except to its employes.

"Section 2. * * * No carrier, unless otherwise provided by this act, shall engage or participate in the transportation of passengers, or property, as defined in this act, unless the rates, fares and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of the act; nor shall any carrier charge, or demand, or collect, or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs, than the rates, fares and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner, or by any device, any portion of the fares, rates and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs. * * *"

The violation of these sections of the statute is punishable by heavy fine.

No question of the good faith of the parties in making the contract is raised, and the length of time it has existed prior to the enactment of the federal statute precludes the possibility of any intent to evade its provisions. The first question then, arising upon the record is whether or not the Congress, in the enactment of the statute, intended to abrogate existing contracts such as the one in question—in other words, whether the statute was intended to be retroactive in its effect on pre-existing contracts, or whether it was intended to be prospective in its effect—and, second, whether or not the contract in question is within the purview of the federal statute at all.

The rule is well settled that statutes will always be construed to be prospective, and not retrospective in their effect, unless the language so plainly expresses a retrospective intent as to preclude a reasonable doubt that the Legislature meant it to be prospective. Cooley, in his work on Constitutional Limitations, in speaking of this rule of construction (page 529), says: "Nevertheless, legislation of this character is exceedingly liable to abuse; and it is a sound rule of construction that a statute should have a prospective operation only, unless its terms show clearly a legislative intention that it should operate retrospectively." And Endlich, in his work on the Interpretation of Statutes (section 271), uses this language: "Upon the presumption that the Legislature does not intend what is unjust rests the leaning against giving certain statutes a retrospective operation. * * * They are construed as operating only on cases or facts which come into existence after the statutes were passed, unless a retrospective effect be clearly intended." There is nothing in the language of the en-

actment by Congress under discussion, which purports to give a retrospective effect to its operation; on the contrary, the intent that the statute should have a prospective effect only appears from a most cursory reading of the language used, unless it is applied to the actual issuance of the passes and not to the contract under which they are issued. We do not think it admissable to so construe the language of the statute as to hold that it applies simply to the issuance of a pass or ticket for transportation, rather than the contract under which the pass is issued. It is true that, in the execution of the contract made in 1871, it has been the custom of the railroad company to issue passes to the appellees annually, and therefore, if we fix our attention exclusively upon this annual issuance of tickets for transportation, it might seem that these fall within the letter of the statute because they are actually issued since the enactment; but this narrow view of the matter is inadmissable. The passes or tickets actually issued are in execution of the contract made in 1871, and unless this contract is invalidated by the statute, its language cannot be applied to the mere issuance of the tickets. If the contract remains legally in force, the means by which it is executed cannot be invalid or illegal.

Passing now to the second question, we are of opinion that the contract between the appellant and the appellees does not fall at all within the meaning of the language used in the statute. The statute inhibits the issuance by common carriers doing interstate commerce of free tickets or passes for transportation, except to employes. The tickets or passes issued to the appellees in execution of the contract

cannot in any real sense be called free. They are paid for in money, just as certainly as if the actual cash was handed over to the agent of the railroad by the appellees in payment for a trip ticket. The appellees had received serious bodily injuries caused by the negligence of the railroad, and the latter was liable to them for damages, which, unless the matter was settled amicably, would have to be liquidated by the verdict of a jury and the judgment of a court. It was entirely competent for the parties thus standing towards each other to settle this unliquidated claim or demand for money and agree upon its value. They did so, and it was stipulated that the amount of damages suffered by the appellees was equal in value to such transportation as they should afterwards choose to make over its line during their natural lives. At the time this agreement was made, it was entirely legal and valid, and, as said before, it was made in absolute good faith by the parties. Now, suppose, instead of carrying out the contract in the manner adopted, the railroad had agreed that it was liable to appellees for the sum of $10,000, and had paid over to them that sum, and then appellees had chosen, as they might have done, to hand back the amount received, and thus purchased from the railroad with actual cash transportation for life—would tickets issued under this agreement be called "free tickets," or "free passes"? We think not, and yet it would be difficult to find a difference in principle between the contract actually made and that supposed. It does not require more than a slight investigation to reach the conclusion that the contract made by the parties was very much to the advantage of the railroad as against the pay-

ment by it of such sum as the jury might assess in actual cash if the matter had progressed to a judgment for damages.

It may be admitted, for the purposes of the case, that Congress could have framed the statute so as to abrogate the contract under discussion. There is no constitutional inhibition upon Congress passing laws to impair the obligation of contracts as there is against the states passing such laws; but the same moral obligation against such unjust laws rests upon the general government as upon the state government, and we must presume that the general government never intends to impair the obligation of existing contracts, unless an imperative necessity exists for so doing, and a clear intent to do so is expressed. It would be a great hardship upon appellees to invalidate the contract between them and appellant. The time has long since passed under the operation of the statute of limitations, when they could institute or maintain an action against the railroad for the injuries received by them in 1871, so that if the contract is invalidated now, they would lose absolutely what remaining value it has. This property right will be taken from them without any consideration and we would be justified in reaching the conclusion that Congress intended to invalidate the contract and thus take from appellees their property rights without remuneration only because the language used precludes any other construction.

In the case of United States v. Kirby, 74 U. S. 486, 487, 19 L. Ed. 278, the Supreme Court said: "All laws should receive a sensible construction. General terms should be so limited in their application as not to lead to injustice, oppression, or an absurd con-

sequence. It will also therefore be presumed that the Legislature intended exceptions to its language, which would avoid results of that character. The reason of the law in such cases should prevail over the letter." In the case of Carlisle v. United States, 16 Wall. 153, 21 L. Ed. 426, the rule is thus stated: "All general terms in the statutes should be limited in their application, so as not to lead to injustice, oppression, or unconstitutional operation, if that be possible. It will be presumed that the exceptions were intended which would avoid results of that character." And in Market Co. v. Hoffman, 101 U. S. 116, 25 L. Ed. 782, it was said: "In Brewer's Lessee v. Blougher, 14 Pet. 178, 10 L. Ed. 108, it was said to be the undoubted duty of the court to ascertain the meaning of the Legislature, from the words used in the statute and the subject-matter to which it related, and to restrain its operation within narrower limits than its words import, if the court is satisfied that the literal meaning of the language would extend to cases which the Legislature never designed to include in it." See, also, Chew Heong v. United States, 112 U. S. 555, 5 Sup. Ct. 255, 28 L. Ed. 770; Holy Trinity Church v. United States, 143 U. S. 457, 12 Sup. Ct. 511, 36 L. Ed. 226; Bate Refrigerator Co. v. Sulzberger, 157 U. S. 37, 15 Sup. Ct. 508, 39 L. Ed. 601.

As we have said before, the very case we have here was decided in the Circuit Court of the United States for the Western District of Kentucky in favor of the appellees. Mottley v. L. & N. R. R. Co.; supra. It is true, the judgment was reversed by the Supreme Court of the United States because of want of jurisdiction in the federal court to entertain the cause of

action set up by appellees; but we think the pains-
taking and thorough opinion rendered by the learned
federal judge upon the merits of the case is very in-
structive, and we rely upon it with confidence.  Nor
are we unmindful of the opinions in Southern Wire
Co. v. St. Louis Bridge & Tunnel R. Co., 38 Mo. App.
191, and Fitzgerald v. Grand Trunk R. Co., 63 Vt.
169, 22 Atl. 76, 77, 13 L. R. A.   70, which hold that
existing traffic contracts discriminating as to rates
between shippers were repealed by the interstate com-
merce act of 1887 (Act. Feb. 4, 1887, c. 104, 24 Stat.
379 [U. S. Comp. St. 1901, p. 3154]).  The opinions
in these cases rest, in part, at least, upon the fact that
the discriminating contracts by common carriers be-
tween their patrons were illegal at the common law,
and could not be upheld in any event; but, without
examining this phase of the case too minutely, it is
sufficient to say that, in our opinion, they can be
distinguished from that at bar.  Those contracts were
wholly executory, and fell within the precise reason
for the enactment of the act of Congress prohibiting
discrimination in interstate commerce.  In the case
at bar the appellee's part of the contract was entire-
ly executed.  They had paid over to the railroad com-
pany the whole consideration moving from them for
the contract.  To annul this contract now would be
to confiscate the consideration paid by them.  Nor
was that contract in any wise illegal or questionable
at the time it was made.  On the contrary, as we
understand it, it was entirely legal and valid.  There
is nothing in this record to show that the contract in
any wise discriminates in favor of appellees.  On
the contrary, we think it highly probable that they
pay for their railroad transportation under its terms

a very much larger sum in money than the ordinary passengers do. In other words, judging from ordinary experience in such cases, where neither the liability nor the extent of the damages is questioned, we think it more than probable that the verdict appellees would have received at the hands of a jury, if invested, would produce a sum which would more than pay for the transportation which they actually received under the contract. Of course, this is somewhat problematical; but, as the railroad thought it was to its interest to make the contract, we cannot believe that our supposition is overstrained.

For these reasons we are of opinion that the contract under discussion does not fall within the terms of the federal statute, and that the judgment of the trial court should be affirmed, and it is so ordered.