Merrimack, ⎱
Feb. 1, 1910. ⎰

### EMERSON v. BOSTON & MAINE RAILROAD & a.

A provision in a lease of one railroad corporation to another, by which the latter agreed to transport the stockholders of the former to and from their corporate meetings "free of charge," is not rendered void by a subsequent statute prohibiting the issuance of free passes.

BILL IN EQUITY, heard upon bill and answer. Transferred from the April term, 1909, of the superior court by *Stone*, J., who ruled that the bill be dismissed, subject to the plaintiff's exception.

The plaintiff is a stockholder in the Concord & Montreal Railroad, one of the defendants, which railroad was leased in 1895 to the Boston & Maine Railroad. By one of the provisions of the lease, the lessee agreed to transport the stockholders of the lessor to and from the latter's annual and special meetings, free of charge. The plaintiff, desiring to attend an annual meeting of his company, has demanded of the lessee transportation in accordance with the terms of the lease, which was refused on the ground that compliance would be a violation of chapter 126, Laws 1909. The prayer of the bill is that the lessee be ordered to furnish the plaintiff the transportation demanded.

*Martin & Howe*, for the plaintiff.

*John M. Mitchell*, for the defendants.

WALKER, J. The question presented by the plaintiff's exception to the ruling dismissing the bill is whether the provision in

the lease of the Concord and Montreal Railroad to the Boston & Maine Railroad, which provides that "the lessee . . . shall transport the stockholders of the lessor to and from their annual and special meetings free of charge," has been invalidated by chapter 126, Laws 1909, entitled "An act to prohibit free transportation of passengers by carriers." Section 2 of that act provides that "no carrier shall, directly or indirectly, issue or give any free ticket, free. pass, or free transportation for passengers between points within this state, except to" certain specified classes of persons, which do not include a stockholder of a leased road, like the plaintiff. Section 6 authorizes the imposition of fines for violations of the act.

The controlling purpose of the legislature in the passage of this act was to prevent the continuance of what was deemed to be the pernicious practice of railroad corporations in gratuitously issuing passes to passengers over their lines, whose friendly influence for political or other purposes might thus be secured to the detriment of the public good. This was the principal mischief which it was sought to correct, and which must be borne in mind in any attempt to judicially construe the statute. Legislative language is not given a strict or literal meaning when it is apparent from competent evidence that such meaning was not intended by the lawmakers. " The evil at which the statute was aimed is evidence of its meaning (Co. Lit. 381, b; 1 Bl. Com. 87), and may be looked for in the public history of the time. *Aldridge* v. *Williams*, 3 How. 9, 24; *United States* v. *Railroad*, 91 U. S. 72, 79; *Rich* v. *Flanders*, 39 N. H. 304, 311, 312." *Opinion of the Justices*, 66 N. H. 629, 660; *Pierce* v. *Emery*, 32 N. H. 484, 508. The statute in question prohibits free transportation of passengers by railroads, with certain exceptions not germane to the present inquiry. Does the plaintiff seek "free transportation" for himself, in the sense in which that expression is used in the statute?

His claim is based, not upon a gratuitous favor which he asks the railroad to accord to him and which for obvious reasons the railroad is under no legal obligation to grant, but upon a contractual obligation entered into by the defendants, which, if valid and binding at the present time, establishes his stockholder's right to be transported to and from the corporate meetings of the Concord & Montreal Railroad. In effect, his contention is that his right to such transportation has been bought and paid for, and that he is not asking the defendants to make a new contract or arrangement to transport him without pecuniary compensation, but to perform an old contract which has been in force for many years. By the lease, the Boston & Maine Railroad agreed with the lessor corporation to " transport the stockholders of the lessor

to and from their annual and special meetings free of charge."
This was one of the essential parts of the contract.  It constituted
one of the considerations for the execution of the lease; and as it
was not at that time prohibited by law or contrary to public
policy, it became a binding part of the contract.  It is not inaccu-
rate or misleading, as a legal proposition, to say that the lessee
was paid for furnishing the transportation in question.  In this
view of the case, the lessee is merely asked in this proceeding to
perform its contract.  Although it agreed to carry stockholders
"free of charge," the meaning is, not that it assumed to do that as
a pure gratuity, but that for a sufficient consideration it agreed to
carry them without the usual and additional compensation exacted
of ordinary passengers.  The terms of the lease admit of no other
sensible construction upon this point.

As the stockholders of the Concord road authorized and ratified
the lease, and were in effect the actual lessors, and became entitled
as such stockholders to the transportation provided for them in
the lease, the issuance of a stockholder's pass to the plaintiff for
the purpose of attending the annual meeting of the Concord &
Montreal corporation is not a violation of the provisions of chapter
126, Laws 1909.  It cannot be presumed that the legislature
intended the act to have a retrospective effect, rendering former
valid contracts illegal and void.  This result is supported by
analogous cases in other jurisdictions.  *Dempsey* v. *Railroad*, 146
N. Y. 290; *Louisville etc. R. R.* v. *Mottley*, (Ky.) 118 S. W. Rep.
982; *S. C.*, 150 Fed. Rep. 406; *Curry* v. *Railway*, 58 Kan. 6, 18;
*Oklahoma City* v. *Railway*, 20 Okla. 1.

*Exception sustained.*

Young, J., doubted: the others concurred.