ALBERT MARTIN, JOHN MARTIN and ANTHONY MARTIN, partners trading under the firm name and style of ALBERT MARTIN, complainants,

*v.*

DYER-KANE COMPANY, a corporation, defendant.

[Decided April 27th, 1933.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Bigelow, who delivered the following opinion:

"The receivers of Dyer-Kane Company, an insolvent corporation, ask the court to approve their final account, to fix their compensation and the compensation of their counsel, and to direct a distribution of the balance remaining in their hands. They have allowed as a preferred claim $1,000 for two months'

wages due to Edward E. Dyer. Mr. Dyer was one of the principal stockholders of the insolvent company, a member of its board of directors, and its president and general manager. I do not understand that the last two offices were distinct and separate; rather, that Mr. Dyer held the office of president and by virtue of the by-laws or custom of the company, the duty of managing the enterprise fell upon the president. In my opinion, he is not entitled to preference; he is a general creditor only.

"The solution of the problem depends on the interpretation of section 83 of the Corporation act. *Comp. Stat. p. 1650.* Preference for wage claims first appeared in our statutes in *P. L. 1849 p. 300 § 43,* and was limited to 'laborers.' By *P. L. 1869 p. 1448,* the preferred group was enlarged 'to include all persons doing labor or services, of whatever nature, for or as officers in the regular employ of said corporations.' In the General Corporation act of 1875 (*Rev. p. 188 § 63*), the preference was expressed as follows: 'In case of the insolvency of any corporation, the laborers in the employ thereof shall have a lien upon the assets thereof for the amount of wages due to them respectively, which shall be paid prior to any other debt or debts of said company; and the word laborers shall be construed to include all persons doing labor or service of whatever character, for or as workmen or employes in the regular employ of such corporations.' The omission of the word 'officers,' which had been inserted in 1869, suggests a legislative intent that corporate officers as such should not be preferred.

"Vice-Chancellor Van Fleet, in *Lehigh Coal and Navigation Co.* v. *Central Railroad Co., 29 N. J. Eq. 252,* stated the principle governing the construction of section 63: 'The considerations against a latitudinarian or even liberal construction are decisive. The preference given is in derogation of the common right of equality. The statute confers a special or exceptional right. It makes a distinction among persons having, according to the principles of natural justice, equal rights and takes from all classes of creditors, secured and unsecured except one, that that particular class may be paid

in full. When a statute produces such a result, those who claim under it have a right to take what is clearly given by plain words, but nothing more.' To the same effect are *Delaware, Lackawanna and Western Railroad Co.* v. *Oxford Iron Co., 33 N. J. Eq. 192, 202,* and *Colyer* v. *Fosler Screen Co., Inc., 99 N. J. Eq. 734.* In *England's Executors* v. *Daniel F. Beatty Organ and Piano Co., 41 N. J. Eq. 470,* and again in *Weatherby* v. *Saxony Woolen Co., 29 Atl. Rep. 326,* Vice-Chancellor Bird held that the president of a corporation was not a preferred creditor under section 63.

"The next statute which need be noticed is 'An act to secure to laborers and workmen in the employ of corporations a prior lien for wages in cases of insolvency' (*P. L. 1892 p. 426*) : 'That in case of the insolvency of any corporation the laborers and workmen and all persons doing labor or service of whatever character in the regular employ of such corporation shall have a first and prior lien upon the assets thereof for the amount of wages due to them respectively for all such labor, work and services as may have been done, performed or rendered within two months next preceding the date when proceedings in insolvency shall be actually instituted and begun against such insolvent corporation.'

"In *Consolidated Coal Co.* v. *Keystone Chemical Co., 54 N. J. Eq. 309,* Vice-Chancellor Pitney said: 'The act of 1892 is a little broader in its language than that of the original section 63 of the Corporation act. Instead of the words "the laborers in the employ thereof," we have in the latter act the words "the laborers and workmen and all persons doing labor or service of whatever character, in the regular employ of such corporation, shall have a first and prior lien," &c. I would here interpolate that the older statute by definition of the word "laborer" did include "all persons doing labor or service of whatever character, for or as workmen or employes in the regular employ of such corporation." ' Referring to *England's Executors* v. *Daniel F. Beatty Organ and Piano Co., supra,* Vice-Chancellor Pitney added: 'Now I can very well see how a president of a corporation under the old act could not be held to be a "laborer in the employ of

the corporation." His work might be merely supervisory in its character and not include any service involving labor. But a bookkeeper's services do involve "labor" in the strict sense of that word; hence. a bookkeeper is a laborer.' And he allowed the preferred claim of a bookkeeper who was also a director of the corporation but who had no pecuniary interest therein and was only a nominal stockholder.

"The facts cited in the opinion just quoted are so different from those now before the court. that the decision has little bearing on the claim of Mr. Dyer. The principal purpose of the legislature in the enactment of 1892, as it seems to me, was to limit the preference to wages for services performed within two months preceding the insolvency suit. In the description of the class of persons to whom a preference was given, the order of the words was changed, seemingly for the sake of simplicity rather than to enlarge the preferred class. To find the legislative intent, the title of the act must be considered; it includes only 'laborers and workmen in the employ of corporations.' By force of our constitution, the wage claims preferred by the statute must be restricted by the title to those of 'laborers and workmen.' *Curtis & Hill, &c., Co.,* v. *State Highway Commission 91 N. J. Eq. 421, 426.* The general meaning of these words is well understood even though it is difficult to give to them exact definition; they do not include the president of a corporation. Section 1 of the act of 1892 was embodied in section 83 of the act concerning corporations (Revision of 1896—*Comp. Stat. p. 1650*), without any change which need be noted. It is our present law on the subject. Where, as here, the legislature joins together a large number of old statutes in one revised act, the presumption is that no change in the meaning and effect of the old law is intended. *Leonard* v. *Leonia Heights Land Co., 81 N. J. Eq. 489.* Section 83 should be given the same interpretation as the act of 1892; the scope of the preference is still restricted by the title of the act of 1892, even though the title itself is not included in the Revision of 1896.

"I would have no difficulty in concluding that the president of a corporation is not entitled to preference were it not for the two cases next cited. In *Buvinger* v. *Evening Union*

*Printing Co., 72 N. J. Eq. 321,* Vice-Chancellor Leaming held that the general manager of a corporation, who was also a stockholder and a member of the board of directors was entitled to preference under section 83 of the Corporation act of 1896. In *Lammerding* v. *Lammerding Lumber and Supply Co., 107 N. J. Eq. 551,* Vice-Chancellor Church held that officers and directors of insolvent corporations had preferred claims for services rendered. But in neither of these cases does it appear that a claim by a president, the highest officer of the corporation, was the subject of dispute and on this ground they can be distinguished. I do not think that these precedents should be extended so as to control the instant litigation. To do so would bring them into conflict with the earlier cases above cited and especially with Vice-Chancellor Van Fleet's rule of interpretation in the *Lehigh Coal and Navigation Company Case.*

"Mr. Dyer, as president of the Dyer-Kane Company, had an intimate knowledge of the affairs of the corporation; in extending to it credit for his own services, he acted with full knowledge of the risk and relied upon his own ability to make the enterprise successful. In the event of success, he was in a position to make large profits on his stock. On the other hand, the general creditors had only such information about the company's financial position as might be disclosed to them by the company's officers or might be obtained from credit agencies; they had no control over the company's policies. When they gave credit to the corporation, they relied upon the soundness of Mr. Dyer's management. Now that the business has failed, it seems to me unjust that he who was responsible for the management and who most fully knew the situation, should be preferred over other creditors. Such an intention will not be imputed to the legislature in the absence of plain words clearly giving him the preference."

*Messrs. Perlman & Elias (Mr. Nicholas O. Beery,* of counsel), for the appellant Frederick B. Conant, assignee of Edward E. Dyer.

*Mr. Irving L. Werksman,* for the respondent.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion delivered by Vice-Chancellor Bigelow in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, HEHER, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 14.

*For reversal*—None.