LILLIAN M. NIGRO *v.* FRANKLIN V. FLINN.

*(June 21, 1937.)*

LAYTON, C. J., RODNEY and SPEAKMAN, J. J., sitting.

*W. Thomas Knowles* for plaintiff.

*Aaron Finger* (of Richards, Layton and Finger) for defendant.

Superior Court for New Castle County, No. 180, September Term, 1936.

LAYTON, C. J., delivering the opinion of the Court:

The question raised by the demurrer is whether an action to recover damages for personal injuries is barred absolutely after the expiration of one year from the accural of the cause, as provided by *Section* 10 of *Chapter* 146 of the *Revised Code* of 1915, notwithstanding the saving of the disability of infancy contained in *Section* 14.

The plaintiff contends that the *Act* adopting the Revision repealed all pre-existing statutory law, and enacted a new body thereof; that the meaning and effect of *Section* 10 must be determined from the language of *Chapter* 146; and that as the language of that Chapter, considered as a whole, is plain, clear and free from ambiguity, resort may not be had to construction. Wherefore, it is urged, actions for personal injuries are subject to the exceptions contained in *Section* 14, because such action is within one of the "foregoing provisions."

It must first be determined, however, whether the plaintiff's premise, that the Legislature enacted a new body of statutory law, is to be accepted.

The command of the Legislature to the Commissioners, as expressed by the Joint Resolution, was to revise, codify and arrange in a systematic and condensed form, all of the existing statute laws of the State of a public and general nature under appropriate titles, but in no case to omit, add to, amend, alter, change or vary the meaning of any existing law. The purpose of the Legislature was to provide for a compilation of the existing statutes of a public and general nature, and words could not be found to express more precisely the purpose. A code, in a strict sense, embracing all of the law of the State from whatever source derived, the common law, the constitution of the State, the decisions of the Supreme Court, and the ancient English Statutes in force in the State, was not within the contem-

plation of the Legislature. See 6 *Am. & Eng. Ency. Law* (2d Ed.) 173; *Central of Ga. Ry. Co. v. State,* 104 *Ga.* 831, 31 *S. E.* 531, 42 *L. R. A.* 518; *Gibson v. State,* 214 *Ala.* 38, 106 *So.* 231. The Commissioners have declared that they endeavored to present the law as it existed in the *Code* of 1852 and the statutes subsequently passed. There is nothing in the act adopting the Revision of 1915 to indicate that the Legislature intended to deviate from the purpose expressed in the Joint Resolution.

The Supreme Court, in *Lewis v. Pawnee Bill's Wild West Co., supra,* in construing *Chapter* 594, *Volume* 20, *Laws of Delaware,* embodied in the Revision of 1915 as *Section* 10 of *Chapter* 146, said that it contained no saving clause and no reference to any saving clause in any other statute; that it did not purport to be an amendment or supplement to the general statute of limitations (*Chapter* 123 of the Revision of 1893) ; and that the Legislature intended it to operate as a special statute of limitations with respect to the causes of actions designated for the reason that in such actions, the evidence, being usually oral, was likely to be lost by death or absence of witnesses, failure of memory and other causes. The effect of the construction given to the *Act* was to add to it a provision that it was not subject to the exceptions of the general statute of limitations, and the construction became as much a part of the *Act* as if plainly written into it originally. *Annie Kealoha et al. v. Castle,* 210 *U. S.* 149, 28 *S. Ct.* 684, 52 *L. Ed.* 998. The *Act* was passed in 1897. The Supreme Court construed it in 1907, and the construction placed upon it was supported by long acquiescence, evidence of a high character that the construction was in accord with the legislative intent. See 59 *C. J.* 1037.

As construed and acquiesced in, the *Act* found its way into the Revision of 1915 as *Section* 10 of *Chapter* 146 (*Section* 4675), which is the general statute of limitations.

■■ Where a statute is embodied in a revision or codification without subsequent change of language, it is considered as a continuance of the old law with the same meaning and effect, and not as a new and original enactment, unless there is a plain indication of legislative intent to alter the law; and a mere separation of sections of an act and a rearrangement of them in different connections does not, in the absence of intent so to do, change the purpose, operation and effect of the original statute. 59 *C. J.* 897; 2 *Lewis' Sutherland, Stat. Cons.,* § 451; 25 *R. C. L.* 1075; *Anderson v. Pacific Coast S. S. Co.,* 225 *U. S.* 187, 32 *S. Ct.* 626, 56 *L. Ed.* 1047; *Byfield v. City of Newton,* 247 *Mass.* 46, 141 *N. E.* 658; *Knight v. Freeholders of Ocean County,* 49 *N. J. Law* 485, 12 *A.* 625; *King v. Smith,* 91 *N. J. Law* 648, 103 *A.* 191; *Martin v. Dyer-Kane Co.,* 113 *N. J. Eq.* 88, 166 *A.* 227; *Leonard v. Leonia Heights Land Co.,* 81 *N. J. Eq.* 489, 87 *A.* 645, *Ann. Cas.* 1914 *C,* 749.

*Braun v. State,* 40 *Tex. Cr. R.* 236, 49 *S. W.* 620, presents a situation markedly similar to the one under consideration. There it was said that the general presumption will be indulged that the codifiers did not intend to change the laws as they formerly stood, their functions being merely to bring forward and arrange them, and that the Legislature, in codifying the laws, intended to bring them forward, giving them the same effect which they formerly had.

In *Hudson v. Flood,* 5 *Boyce* (28 *Del.*) 450, 94 *A.* 760, the question was whether a beneficiary under a will was a credible witness thereto under *Section* 3241 of the Revision of 1915, requiring wills to be attested and subscribed by two or more credible witnesses. *Section* 3242 specifically provided that a creditor of a testator, or a person taxable for poor relief, might be a witness although the will provided for the payment of debts or for the relief of the poor. *Section* 4212 declared that no person should be incompetent to

testify in any civil action because of interest. The latter section was enacted long after the *Wills Act* (*Section* 3239 *et seq.*). The adoption of the Revision was subsequent to the death of the testatrix. It was contended that *Section* 3242 was a declaration by the Legislature that no interested person other than a creditor or one taxable for poor relief, could be a witness to a will. The Court in Banc held that the beneficiary was a credible witness. In the case of *Meservey's Will*, 4 *W. W. Harr.* (34 *Del.*) 482, 155 *A.* 593, the testator having died after the adoption of the revision of 1915, it was contended that the situation was different from that presented in *Hudson v. Flood*, and that the re-enactment of the *Wills Act* and the act removing generally the disqualification of witnesses because of interest resulted in the disqualification of all persons having an interest under a will as witnesses thereto except those coming within the provisions of *Section* 3242. The Court, however, held that the codifiers were simply authorized to codify and arrange existing laws, not to change or propose new ones, and that the *Wills Act* and the enabling act removing the disqualification of witnesses because of interest stood in the same relative position as at the time they were construed by the Court in *Hudson v. Flood*.

The Chancellor, in *Atlantic Refining Co. v. Penn Seaboard Steel Corp.*, 16 *Del. Ch.* 1, 138 *A.* 724, 725, said that it was not the purpose of the commissioners in drafting the *Code of* 1915, or of the Legislature in its enactment, generally speaking, to provide for new legislation, but that the purpose was, as shown by the Joint Resolution creating the commission, "to codify and arrange existing law."

It is, of course, true that if the existing law is, in fact, changed either by a Code, in its strict sense, or by a revision or compilation of statutes, the adoption of the Code, revision or compilation effectuates the change, no matter what the authority of the codifiers may have been.

*Ex parte Donnellan,* 49 *Wash.* 460, 95 *P.* 1085; *Stevens v. State,* 70 *Tex. Cr. R.* 565, 159 *S. W.* 505; *Klingensmith v. Siegal,* 57 *N. D.* 768, 224 *N. W.* 680; *Herndon v. State,* 16 *Okl. Cr.* 586, 185 *P.* 701; *Conn. v. New York C. & H. R. R. Co.,* 206 *Mass.* 417, 92 *N. E.* 766, 19 *Ann. Cas.* 529.

 It is also true that the Courts of the State repeatedly have recognized the rule that where the language of a statute is plain and unambiguous and its meaning clear and unmistakable, there is no room for construction. See *State v. Bethlehem Steel Corp.,* 7 *W. W. Harr.* (37 *Del.*) 441, 184 *A.* 873, where the cases are in part, collected. The foundation of the rule is the supremacy of the Legislature in its field of operation. So generally, the meaning of a statute must be ascertained from its language. *Cantor v. Sachs,* 18 *Del. Ch.* 359, 162 *A.* 73; *Industrial Trust Co. v. Cantera,* 5 *W. W. Harr.* (35 *Del.*) 364, 165 *A.* 338; and Courts are not permitted to search for obscure or hidden motives or purposes either from a consideration of the statute itself, or from extrinsic circumstances, where the Legislature has employed language plainly expressive of an intent not rendered dubious by the context. But even where an ordinary statute is involved the rule is not too rigid and unyielding as to preclude inquiry and to prevent construction in all cases. There are cases where the strict letter of the statute is not deemed controlling. These cases are few and exceptional, and only arise where there are cogent reasons for believing that the letter does not fully and accurately disclose the intent. *U. S. v. Goldenberg,* 168 *U. S.* 95, 18 *S. Ct.* 3, 42 *L. Ed.* 394. Legislative language is not given a strict or literal meaning when it is apparent from competent evidence that such meaning was not intended by the lawmakers. *Emerson v. B. & M. R. Co.,* 75 *N. H.* 427, 75 *A.* 529, 27 *L. R. A.* (*N. S.*) 331. The intention of the Legislature in enacting a law is the law itself, and must be enforced when ascertained, although it may not be consistent with the strict letter of the statute; and Courts

are not compelled to follow the letter of a statute when it bears away from the true intent and purpose and to conclusions inconsistent with the general purpose of the act. 2 *Lewis' Sutherland, Stat. Cons.,* § 336 *et seq.; Harlee v. Federal Finance Corp.,* 4 *W. W. Harr.* (34 *Del.*) 345, 152 *A.* 596. Unjust, absurd and mischievous consequences flowing from a literal interpretation of language may create an ambiguity calling for construction. 25 *R. C. L.* 958; 2 *Lewis' Sutherland, Stat. Cons.,* § 367; *State v. Bethlehem Steel Corp.,* 7 *W. W. Harr.* (37 *Del.*) 441, 184 *A.* 873; *Wallen v. Collins,* 6 *W. W. Harr.* (36 *Del.*) 266, 173 *A.* 801, furnishes an example.

We are concerned here with a special kind of a statutory enactment, a revision of statutes. With this kind of statute, as with all statutes, the intention of the Legislature, when ascertained, must be carried into effect. Reliance need not be placed upon the mischievous consequences which would follow from a literal interpretation of the language of the *Chapter,* nor upon a mere presumption that no change in the meaning and effect of the old law was intended in the absence of a plain indication of legislative intent. Cogent evidence of the highest character, a legislative direction not to change or vary the meaning of any existing law, and the declaration of the codifiers that they endeavored to obey that direction, conclusively demonstrate the legislative purpose and intent in adopting the Revision of 1915. As against the construction put upon the *Act* by the Supreme Court, the long acquiescence in that construction by the Legislature, the practice of years, the legislative direction to the codifiers and their declaration, the plaintiff relies solely on fortuitous circumstance of place.

The conclusion must be that the meaning and effect of *Chapter* 594, *Volume* 20, *Laws of Delaware,* as construed by the Supreme Court, was not changed by its embodiment in the Revision of 1915 as *Section* 10 of *Chapter* 146 (*Sec-*

*tion* 4675), and, therefore, the right of the plaintiff to an action to recover damages for alleged personal injury was barred after the expiration of one year from date of its occurrence.

The demurrer to the plea is overruled.