87 A.2d 394 (1952)
DU PONT
v.
DU PONT.
No. 2.
Supreme Court of Delaware.
March 17, 1952.
Arthur G. Logan and Stephen E. Hamilton, Jr., of the firm of Logan, Marvel & Boggs, of Wilmington, for the plaintiff below, appellant.
James R. Morford, of the firm of Morford, Bennethum, Marvel & Cooch, of Wilmington, for the defendant below, appellee.
WOLCOTT and TUNNELL, JJ., and BRAMHALL, Vice Chancellor, sitting.
TUNNELL, Justice.
This cause is on writ of error to the Superior Court of New Castle County in *395 respect to a judgment of that court dismissing the plaintiff's petition for annulment of the parties' marriage. The instant motion has been made prior to argument or to the filing of briefs on the merits of the appeal.
The motion papers allege that the appellee herself is not financially able to pay the fees and expenses necessarily incident to this action, and that the plaintiff, on the other hand, is financially able to furnish them for her. In support of the motion it is urged that the authority to make the allowances requested is vested in the court by Para. 3508, Revised Code of Delaware, 1935, and if not so vested, it is an inherent power of the court.
Against the motion it is urged that the above-mentioned Delaware statute authorizes the allowance of suit money in divorce cases only, as distinguished from annulments; that neither the court below nor this court on appeal has inherent power to grant the motion; that our statutory provision for the allowance of suit money in divorces, since it included no such provision as to annulments, amounts to an implied exclusion of any such power the court might otherwise have had; that this court as an appellate court is confined strictly to a consideration of errors in the records of trial courts, and, this application for suit money being in the nature of an original action, and requiring the finding of facts, it is beyond the power of this court to enter an order allowing it; that the defendant in any case is not entitled to the relief sought, because she herself has adequate resources to pay her expenses and to employ counsel; and, finally, that the record establishes that the defendant is unjustly withholding certain valuable furniture and heirlooms of the plaintiff against his will, and has been guilty of perjury in these proceedings below, and for those reasons, if for no other, is ineligible for the relief here sought.
Adverting first to defendant's claim that the power of this court to make the allowance in question is vested in us by Para. 3508, Revised Code of Delaware, 1935, we find that the argument for it is an involved but quite ingenious one, based upon the peculiar history of the Delaware divorce and annulment statutes.
Our first statute putting in the hands of the judiciary the power to dissolve marriages was adopted in 1832 and appears as Chap. CXLIV, Vol. 8, Laws of Delaware. Sec. 7 thereof gave the wife a right to petition for alimony pendente lite. That statute nowhere distinguished between divorces and annulments, affording "divorce" for reasons now constituting grounds for annulment as well as for what we now know as divorce.
Chapter 75, Revised Code, 1852, did not use the word "annulment" but, with one exception, distinguished between divorces, on the one hand, and "petitions to declare marriages null and void", on the other hand. The one exception was Sec. 11, containing the following language, of which defendant has made much in argument:
"Sec. 11. In case of a marriage declared void from the beginning, for either of the causes, other than insanity, mentioned in Section 2, the issue of such marriage shall be deemed to be illegitimate; except that when the marriage is dissolved because of a prior marriage of either party, if the second marriage was contracted in good faith, * * * the issue of the second marriage shall be deemed to be the legitimate issue of the parent who was capable of contracting the marriage.
"In no other case shall a decree of divorce affect the legitimacy of children; and the court shall take (sic) such order for the distribution, care and maintenance of the children, as is just and reasonable, and may revise and change such order, as occasion may require." (Emphasis supplied.)
The language of the above Sec. 11 remained[1] in our law until the revision of 1907.
Chap. DCXXXVIII, Vol. 11, Laws of Delaware, enacted in 1859, first authorized "suit money" for a wife, simply inserting *396 the provision therefor into the sentence which authorized alimony pendente lite.
Chapter 549, Vol. 14, Laws of Delaware, enacted in 1873, represented a restatement of the law as to divorces and "petitions to declare marriages null and void." Under it the Superior Court was granted "sole cognizance to decree marriages null and void" for certain grounds, including among them bigamy, which was alleged as one ground for the annulment petitioned for in the pending action. Section "5" of the 1873 statute contained a statement of the suit money and alimony pendente lite law as it still appears in a portion of Para. 3508, Revised Code of Delaware, 1935: "Section 5. The court may grant alimony to the wife for her sustenance pending her petition for divorce, and may order and direct the husband to pay such sum as may be deemed necessary to defray the expenses in conducting her case, whether the application be on the part of either the wife or husband, and shall protect her from personal restraint."
The whole law in respect to divorce and annulment was in many respects revised in 1907 by Chap. 221, Vol. 24, Laws of Delaware. Under that revision the grounds for annulment and divorce were reshuffled, annulments being so labeled and distinguished from divorces. The provision for alimony pendente lite and suit money, however, as above noted, was left applicable merely to petitions "for divorce".
Interpreting these several stages of statutory development, defendant weaves from them a pattern of argument. When suit money was provided for, it was put on precisely the same footing as alimony pendente lite. The provisions for alimony pendente lite were designed to apply, says she, and originally did apply, to all proceedings for dissolution of marriages. Evidence of the fact that the word "divorce" was not intended to exclude annulments, but was employed as a generic term including annulments, appears from the language in use as late as 1907, in which a specific proceeding for annulment is mentioned, then followed by an expression distinguishing it from "other" types of "divorce".[2] The particular language of the section as to suit money has not been changed in the slightest as to its substance. Hence, these same provisions, she concludes, should still he held to mean what they undoubtedly used to mean up until 1852, and may have meant up until 1907, i. e., as authorizing alimony pendente lite and suit money in any proceeding whatever for the dissolution of a marriage.
The great obstacle in the way of adopting defendant's theory, however, is the clear and unambiguous form of our present statute. It would occur to no one merely reading its present language that the paragraph conferring the express power upon the court to grant suit money in divorces had any application to annulment proceedings. Whatever intermingling or ambiguity had formerly appeared, annulment was definitely separated in the 1907 revision and treated as an action distinct from divorce. "Divorce" was, therefore, re-defined, so that its meaning in the reenacted old section providing for suit money and alimony pendente lite in cases of "divorce" was no longer broad enough to include annulments. While there is a presumption that old statutory language embodied in a revision still retains its old meaning,[3] that presumption applies only where the remainder of the statute as revised is consistent with such a view, for this rule of construction, in common with all others, falls where, as here, the statutory language, when read as a whole is perfectly clear and consistent throughout, and there is no room for judicial interpretation. State v. Johnson, 4 Terry 294, 46 A.2d 641. Since the power to award suit fees and expenses does not appear anywhere in, or as an incident to, Para. 3508 of our 1935 Code, we are compelled to hold that it is not conferred by that statute. Compare State ex rel. Wootten v. District Court, 57 Mont. 517, 189 P. 233, 9 A.L.R. 1212.
Next we must consider defendant's claim that the power to grant an allowance for *397 suit fees is "inherent in the court". She says that the jurisdiction to try and determine annulment actions carries with it the right to have them adequately presented, which, in many instances, including the one sub judice, would not be possible without an allowance for suit fees. The theory, of course, is that owing to the economic disadvantages which the law and society impose upon a wife, the trial of an annulment proceeding without such an allowance would frequently be an unequal contest. To adjudge the merit of such a contention, we must examine the constitutional provisions controlling the Superior Court in general and the particular statute granting it annulment jurisdiction.
Article IV, Sec. 7, of the Delaware Constitution vests in the Superior Court, in civil cases, all common law jurisdiction and "all other the jurisdiction and powers vested by the laws of this State in the Superior Court." Obviously, the power here invoked is not a common law power; the common law courts had no jurisdiction whatever over annulment suits or divorce actions, and the granting of suit fees was wholly foreign to their practice. Brown v. Brown, 3 Terry 157, 29 A.2d 149.
The next question, then, is whether any statute of the state other than the one we have already considered should be so read as to authorize granting the defendant's motion. The one relied upon for the purpose is the very statute conferring annulment jurisdiction. It is Para. 3502, Revised Code of Delaware, 1935, and is couched in the following simple language: "3502. Sec. 6. Jurisdiction of Superior Court:  The Superior Court of this State shall have and entertain jurisdiction of all actions for annulment of marriage, or for divorce."
In ensuing paragraphs the statute proceeds to provide for the filing of a petition in the prothonotary's office, to require an affidavit, and to specify what type of service shall be sufficient; it does not, however, purport expressly to contain the rules for administration of the jurisdiction conferred. The necessary concomitants of jurisdiction were implied in the statute. D. v. D., 2 Terry 263, 267, 20 A.2d 139.
Although upon the adoption of our first annulment and divorce statute the trial of annulment causes was wholly foreign to the jurisdiction of common law courts, that is not to say that it was a new field of litigation. On the contrary, such actions had long been tried in the Ecclesiastical Courts of England. Those courts had developed and proclaimed their rules of procedure and defined those extraordinary incidents to matrimonial jurisdiction which were deemed necessary in order in some measure to equalize the positions of the contending parties. One of those incidents to jurisdiction in such actions was the practice of awarding the wife interim alimony and suit money upon a proper showing. Portsmouth v. Portsmouth, 3 Addams Eccl. Rep. 63; 162 Eng. Reprint 404.
It has always been recognized in the State of Delaware that although the decisions of the spiritual courts were not binding upon us, nevertheless, our courts regard their precedents with the utmost respect in matrimonial causes and follow them wherever they are compatible with our system. Jeans v. Jeans, 2 Harr. 38; Brown v. Brown, supra. Thus, when the Superior Court was confronted with a proposal to compel the physical examination of a wife against her will in an annulment action, although the common law courts, in the exercise of nothing more than their traditional functions, would have been powerless to make such an order, the Superior Court, acting simply under Paragraph 3502, Revised Code of Delaware, 1935, looked to the precedents in the Ecclesiastical Courts and ordered the examination to be taken. S. v. S., 3 Terry 192, 29 A.2d 325. See also Brown v. Brown, supra. Whatever may be the view in any other jurisdiction, therefore, in Delaware it is clear that our courts have heretofore entertained the view that the creation in 1832 of jurisdiction in the Superior Court to dissolve marriages meant a jurisdiction in the sense in which it was known and accepted at the time of the *398 adoption of the statute, that is, as nearly as may be, in conformity with the established practice in the Ecclesiastical Courts of England.
But we do not mean to suggest that the result achieved in Delaware is at variance with the law elsewhere. Many cases are collected in 4 A.L.R., 926; 9 A.L.R., 1222; and 110 A.L.R., 1284, which are authorities for the proposition that the granting of jurisdiction to hear annulments, without there being in the statute any specific reference to suit money, automatically carries with it the right to award suit money. See also 35 Am.Jur., "Marriage", § 70 and 55 C.J.S., Marriage, § 63. The theory is that the concept of annulment jurisdiction itself necessarily contemplates the power to award suit money, for without that power the remedy would be incomplete and in many instances ineffective. A very great majority of American jurisdictions so hold. Thus, if the Delaware courts had not looked upon the decisions of the English Ecclesiastical Courts as determinative of the character of matrimonial jurisdiction, it appears that they would have been forced by the weight of American precedent to the same conclusion.
Against this imposing array of authorities favoring the implication of the power here under discussion, the plaintiff, on the other hand, has been able to cite only four decisions: Monteleone v. O'Hanlon, 159 La. 796, 106 So. 308; Arndt v. Arndt, 399 Ill. 490, 78 N.E.2d 272; Cohen v. Cohen, 121 N.J.Eq. 299, 188 A. 244; Wigder v. Wigder, 188 A. 235, 14 N.J.Misc. 880. The Louisiana case so cited is apposite, but the majority opinion does not discuss the point with which we are here concerned, while the dissenting opinion, which does discuss it, appears to us to be persuasive. The Illinois case reveals that Illinois, unlike Delaware, recognizes no affinity for or inheritance from the Ecclesiastical Courts and entertains a view as to the basis of a wife's right to exact support from her husband which is fundamentally different from the view adopted in Delaware, as announced in Du Pont v. Du Pont, Del., 85 A.2d 724. The two New Jersey cases are simply not in point. The Cohen case was a suit for specific performance of a separation agreement, and the Wigder case was a rather ingenuous effort to obtain an order for permanent alimony after the marriage had been decreed to be void ab initio.
But it must be acknowledged that virtually all of the decisions collected in the above-noted annotations upholding the implied power to award suit money speak of the power to grant suit money and its concomitant, alimony pendente lite, as being within the "equity powers" of the particular court in question. Plaintiff argues, therefore, that since our Superior Court is strictly a law court, after all, these numerous authorities from outside our jurisdiction are actually no precedents for the instant application.
First, we question the force of these general references to "equity". Some careful editors have not incorporated any such suggestion into their broad pronouncements that the power to grant suit fees and expenses goes hand in hand with the power to hear annulments. 35 Am.Jur., "Marriage" § 70; and Nelson, Divorce and Annulment, (2nd Ed.) § 12.09. It appears from our reading, and we suggest, that in many of the opinions the word "equity" was used in its broader, non-technical sense, connoting general principles of fairness and justice, rather than to distinguish between the law and equity sides of the court. In this connection it is significant that virtually everywhere except in our own state these causes are tried in courts having equity jurisdiction. The causes being in Chancery, a reference to equity powers is perfectly natural and not necessarily designed to be contrasted with the powers of other courts.
Further, jurisdiction over annulments, as we have said, is purely a creature of statute. As such, we fail to see why it should be less efficacious merely because in Delaware the power happened to be vested in a law court instead of in the Court of Chancery. Expediency may have been the only reason for selecting the Superior Court in Delaware. In 1832, when the decision was made, Delaware had only one Chancellor, but had four law judges sitting at relatively frequent intervals in the various county seats. If it is necessary in a court of equity *399 to say that the power to award suit money must be read into the statute to make it afford the relief intended by the legislature, then it is no less necessary to read it into the statute when it is to be administered by a law court. It appears to us that the type of relief to be afforded has far greater determinative force upon the nature and scope of the remedy than is exerted by the mere name of the forum where it is to be exercised.
Now we must attend to the plaintiff's contention that including the express power to grant suit fees in Para. 3508 of our law operates to exclude any such power as might be implied in the terms of Para. 3502. This argument, of course, is rested upon the often-invoked maxim, "expressio unius est exclusio alterius." The principle is that where a statute includes a list of things to which it is to be applied, nothing will or can be included which is not on the list. But this, of course, means that nothing unnamed is to be included in the statute in question, and with that conclusion, of course, we are in agreement, for we have already found that the power to grant suit money in annulments is not within the purview of Para. 3508.
Moreover, the jurisdictional statute, Para. 3502, as we have seen, has its roots in the original matrimonial act of 1832, while the "implied exclusion", upon which the plaintiff relies, came about by the later curtailment of the scope of the suit money and temporary alimony statute by the redefinition of the term "divorce" so that it could no longer be applied to annulments. That curtailment, as we observed, occurred either in 1852 or 1907, a question so troublesome that we are pleased to note that for present purposes these dates can be left in the alternative. In either case the general jurisdiction had previously been established, and its necessary implications were pre-existing law. Thus, the argument for "implied exclusion" comes down to a contention for "implied repeal". No authority cited by the plaintiff, and none which has come to our attention otherwise, holds that where a statute ratifies and extends a pre-existing power of a court in one field (e. g., confirming jurisdiction to award suit money in divorces a mensa[4] and extending that power to absolute divorces), the pre-existing powers of that court along parallel lines not mentioned in the statute are thereby repealed.
On the contrary, it is the rule that legislation is, whenever possible, presumed to be consistent with pre-existing law. Laws are assumed to be cumulative, not destructive of other laws. Sutherland Statutory Construction (Horack) 3rd Ed., Sec. 5305. Accordingly, it has long been recognized in our state that "repeals by implication are never favored, and unless it is expressly so provided, one act does not ordinarily repeal another, if both, in whole or in part, can be construed together * *". Mayor and Council of Wilmington v. duPont, 5 Terry 332; 57 A.2d 70. Although we find overlapping, we see no such repugnancy as will prevent us from "construing together" a provision in one statute, Para. 3508, allowing suit money in divorces of both types, and a provision in another statute, para. 3502, impliedly authorizing suit money in annulments and divorces a mensa. We, therefore, hold that the statute giving the court express authority to grant suit money in divorce cases was not intended to have, and actually does not have, any effect upon the other statute impliedly giving the court authority to grant suit money in annulments.
In summary as to this issue, we agree with the opinion of Judge Herrmann in duPont v. duPont, Del.Super., 83 A.2d 105, 106. We prefer, however, not to refer to the power as "inherent in the court", as it is termed by counsel for the defendant, nor as "independent of statute", as it is described by Judge Herrmann, because such a reference could in other circumstances be misleading. Strictly speaking, it is not a power inherent in the Superior Court; it *400 was inherent in the Ecclesiastical Court, and it is for that reason, as well as out of practical necessity, implied in the statute conferring annulment jurisdiction upon the Superior Court. Accordingly, we regard the power as statutory.
Now we must see whether this power to grant suit fees is vested in an appellate court. On this point there is a sharp difference of opinion throughout American jurisdictions generally. See cases collected in 136 A.L.R., 502; 18 A.L.R., 1505; Ann. Cas.1915B, 1251. It is said that the "majority rule"[5] favors such power in an appellate court to exercise that jurisdiction, but it must be acknowledged that if the opposing authorities are fewer in number, they are, nevertheless, numerous indeed and represent the careful thinking of many able jurists.
In our state, however, we are without the complications of express constitutional or statutory language which sometimes have been held to be controlling. Further, having found that in our jurisdiction the power to grant suit fees is statutory, we are not concerned, as many of the states adopting the minority view have been, by the fact that the inherent powers of trial courts and courts of appeal are obviously not the same. Article 4, Sec. 11, of our constitution simply imposes upon the Supreme Court the duty to hear writs of error to the Superior Court. It follows, therefore, that our decision on this phase of the question is concluded by the reasoning we have already found applicable to trial courts. If the simple grant of power to a trial court to hear annulments impliedly carries with it the power to allow suit fees, as we have held, then a similar power necessarily subsists in the Supreme Court. The proceedings before us are merely the further litigation of the same cause. If the implication is there for the trial court, it must still be present when the case is brought before us. There is nothing in our constitution relieving us from the necessity of doing whatever must be done in order properly to administer the jurisdiction expressly conferred upon us.
While we are, therefore, bound to acknowledge that the power rests in this court to allow suit money, it is apparent that its exercise would be appropriate in rare instances only. Disposing of such applications would always involve findings of fact and would be made first in a court primarily designed for that function. However, for us to deny that the power to make the allowances is in the Supreme Court at all, and to say that our only authority in respect to them is to "review" abuses of discretion on the part of trial judges, putting every petitioner to the expense of first sending up the record below, could result in some cases in unjustly depriving a deserving but impecunious wife of her opportunity for any review whatever. Further, there may be instances where supplemental or final allowances are in order, in which the trial court will already have found the facts upon which such awards would necessarily be based, and where there would be no other reason for remanding the case to the trial court. In such circumstances the Supreme Court might well determine that the interests of justice would require such allowances to be made in the Supreme Court.
The matter before us, however, is the ordinary case where there has been no previous application for Supreme Court suit money below, and we must direct the defendant to make her application to the Superior Court. The cause is still pending in the trial court for such a purpose, notwithstanding the appeal, because the application for suit money is entirely compatible with the proceedings for review. We considered a similar distinction in Biggs Boiler Works Co. v. Smith, Del., 82 A.2d 919. Thus, it is not for us, but will be for the trial court, to find the facts in regard to the funds available to the respective parties and to dispose of the respective contentions as to alleged perjury and withholding of plaintiff's heirlooms and furniture.
An order may be submitted denying defendant's motion.
NOTES
[1] Appearing in the 1873 re-enactment in Vol. 14 as Sec. 11, Chap. 549, Laws of Delaware.
[2] Sec. 11, Chap. 549, Vol. 14, Laws of Delaware.
[3] Nigro v. Flinn, 8 W.W.Harr. 368, 38 Del. 368, 192 A. 685.
[4] Since ecclesiastical courts did not grant absolute divorces, it may well be that there was no power implied in the statute to grant suit fees in those cases. See Judge Herrmann's opinion in Du Pont v. Du Pont, Del.Super., 83 A.2d 105 (109).
[5] Nelson, Divorce and Annulment, (2nd Ed.), § 12.49.